IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN FLYNN,<br>GEORGE BROWN,<br>KELLY BROWN, and<br>MICHAEL KEITH,<br>*on behalf of themselves and all*<br>*others similarly situated,*<br><br>       Plaintiffs,<br><br>vs.<br><br>FCA US LLC, *doing business as*<br>**Chrysler Group LLC,** and<br>HARMON INTERNATIONAL<br>INDUSTRIES, INC.<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 15-cv-0855-MJR-DGW<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

In 2015, Brian Flynn, Michael Keith, and George and Kelly Brown, all owners or lessees of Chrysler vehicles, sued Chrysler and Harmon International Industries in this Court. They alleged that Chrysler violated state and federal law by manufacturing the plaintiffs' vehicles with a defective component, and that Harmon violated the same law by creating the defective component. The component at issue is the Harmon-designed uConnect system, which allows for control over the phone, navigation, and entertainment functions throughout the affected Chrysler vehicles. According to the plaintiffs, the uConnect system has a number of design vulnerabilities that allow hackers to take remote control of the vehicles while they are in operation. Those vulnerabilities led Chrysler to initiate a recall, but the plaintiffs say that the recall didn't

1

go far enough. None have been injured due to the defects, but the plaintiffs are fearful of such an injury and have brought suit for damages related to that fear, as well as for damages linked to the overpayment and diminished value of their vehicles. The complaint alleges claims for breach of warranty, violation of the Magnuson-Moss Act, common law fraud, negligence, unjust enrichment, and violation of state consumer protection statutes, each separately predicated on Michigan, Illinois, and Missouri law.

The defendants maintained early in the case that the plaintiffs' case should be dismissed because of standing and pleading problems, and those two motions are ripe for review and will be decided by separate order. This order concerns another matter that cropped up five months after the initial motions to dismiss were filed. Over and above the standing and pleading motions, Chrysler has moved for an order compelling the Missouri plaintiffs, George and Kelly Brown, to litigate their claims via arbitration. Unlike the other named plaintiffs in this proceeding, the Browns purchased their 2014 Jeep Cherokee at a discount pursuant to Chrysler's Employee Advantage Program, and the agreement for that program included an arbitration clause. The agreement said that, in "consideration for" the purchase discount, the Browns would "not be able to bring a lawsuit for any warranty disputes relating to this vehicle," and were instead subject to arbitration. George Brown signed the agreement on behalf of himself and Kelly Brown, and no one disputes that the agreement applies to both of the Browns.

Before getting to the merits of Chrysler's motion to compel, there's one threshold point to take care of, namely whether this Court is the right one to issue an order to compel arbitration. Section 4 of the Federal Arbitration Act governs those orders, and it

says that the "hearing and proceedings" under the agreement "shall be within the district in which the petition for an order directing such arbitration is filed." **9 U.S.C. § 4.** That language has been read as a restriction that leaves to the district court where the arbitration proceedings are set to occur the task of compelling arbitration—if the contract says, as is the case here, that arbitration should happen in Dallas and the compel request is filed in Illinois, the Illinois court should usually leave the order to compel to the Texas courts. *Haber v. Biomet, Inc.*, **578 F.3d 553, 558 (7th Cir. 2009).** The Court says "usually" because the statutory language isn't viewed as a jurisdictional bar that limits the undersigned's authority to issue a compel order, but a venue restriction that designates the most pragmatic forum to issue that order. *E.g., Sanches v. Nitro-Lift Techs., LLC*, **762 F.3d 1139, 1151 (10th Cir. 2014);** *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, **49 F.3d 323, 328-29 (7th Cir. 1995);** *Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, **499 F.2d 1391, 1394 & n.14 (3d Cir. 1974).** Venue limitations can of course be waived, *Moore v. Olson*, **368 F.3d 757, 760 (7th Cir. 2004)**, and when one party moves to compel arbitration and the other party doesn't bring up the venue limitation in the statute, the Section 4 limitation is waived and the Court can compel arbitration outside of its district. *Let's Go Aero, Inc. v. Cequent Performance Prod., Inc.*, **641 F. App'x 988, 990-91 (Fed. Cir. 2016);** *1mage Software, Inc. v. Reynolds & Reynolds, Co.*, **459 F.3d 1044, 1053 (10th Cir. 2006);** *Principal Life Ins. Co. v. Caremark PCS Health*, **LLC, 56 F. Supp. 3d 1013, 1017 (S.D. Iowa 2014).** That's what happened here—Chrysler has moved to compel arbitration and the Browns don't say that a Texas court should be the one to issue any compel order—so the Court can proceed to the merits.

On the merits, the Browns complain the loudest about another type of waiver, one less about the Court's ability to enter a compel order and more about Chrysler's ability to enforce the agreement at all.  They concede that an agreement to arbitrate exists but insist that Chrysler can't enforce that agreement because it waited far too long to seek arbitration.  Things started moving in this case when the Browns and the other plaintiffs filed an amended complaint in late 2015, but Chrysler didn't obtain the Advantage agreement from the Browns' dealership until June 6, 2016, didn't locate the agreement until July 7, 2016 (when Chrysler was preparing for Kelly Brown's deposition), and didn't move for a stay pending arbitration until July 11, 2016.  The way the Browns see it, Chrysler's failure to request arbitration sooner, and its use of the judicial process in the interim, amounts to an implied waiver of arbitration.

It's true that a contractual right to arbitrate may be waived in an implied fashion, despite the fact that the Federal Arbitration Act places a generalized thumb on the scale in favor of arbitration.  *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, **50 F.3d 388, 390 (7th Cir. 1995).**  For an enforcing party to waive its arbitration rights, it must have acted inconsistently with an intent to arbitrate—an inconsistency that can be demonstrated by the enforcing party's actions throughout the federal case.  *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, **660 F.3d 988, 995 (7th Cir. 2011).**  A number of points are relevant to the implied waiver inquiry, among them the extent of a party's diligence in seeking arbitration, the extent of a party's delay in moving for arbitration, and the extent of the party's participation in litigation, including its participation in discovery.  *Cooper v. Asset Acceptance, LLC*, **532 F. App'x 639, 641**

4

**(7th Cir. 2013).** No factor is dispositive, but the diligence of the party trying to enforce arbitration (or a lack thereof) is particularly important. *Cabinetree*, **50 F.3d at 390.**

While the question is a close one, the facts here don't show that Chrysler waived its right to press arbitration. The plaintiffs make much of the fact that Chrysler filed two motions to dismiss at the beginning of the case, long before they moved to arbitrate, but the mere filing of a motion to dismiss at the outset of a case typically isn't the kind of act that points away from a party's intent to arbitrate. *Sharif v. Wellness Int'l Network, Ltd.*, **376 F.3d 720, 726 (7th Cir. 2004).** The plaintiffs also note that Chrysler participated in some discovery, but discovery hadn't progressed all that far as to the Browns by the time Chrysler moved to compel arbitration. Once more, Chrysler didn't know about the agreement during the pendency of that discovery, and Chrysler stopped that discovery the moment it located the arbitration agreement. Those facts, too, point away from any waiver. *E.g., Tristar Financial Ins. Agency, Inc. v. Equicredit Corp. of Am.*, **97 F. App'x 462, 464-65 (5th Cir. 2004);** *Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink & Brewing Workers Union Local 812 Int'l Brotherhood of Teamsters*, **242 F.3d 52, 57-58 (2d Cir. 2001).** The plaintiffs go on to mention that Chrysler has conducted considerable discovery as to the other plaintiffs in this case, both before and after Chrysler moved to arbitrate, but discovery as to the other plaintiffs doesn't lead to a waiver, as those plaintiffs weren't parties to the Advantage agreement. *See Dickinson v. Heinhold Securities, Inc.*, **661 F.2d 638, 642 (7th Cir. 1981).**

The plaintiffs' biggest complaint is that Chrysler wasn't diligent when it came to locating the Advantage agreement—they say that Chrysler should have obtained the

5

agreement from the Browns' dealership long before June 2016, a discovery that would have allowed Chrysler to move to compel far sooner. While the Court doesn't condone a party's failure to locate its own internal documents or a party's failure to find a document when it is put on notice that the document likely exists, that kind of failure isn't at play here. The Browns made no mention of the arbitration agreement in their complaint, didn't turn the agreement over to the defendants in early discovery because they claimed they didn't have it, and seemingly didn't mention the agreement at any other point. Once more, no one suggests that Chrysler actually possessed the agreement from the outset of the case but missed it in its files—the agreement was instead in the possession of the Browns' dealership. The plaintiffs fault Chrysler for not serving a third party subpoena on the dealership earlier in the case, but the decision to briefly defer third-party discovery in favor of discovery on the named plaintiffs was reasonable, especially given that the Browns said nothing to apprise Chrysler that they might be subject to the Advantage program. On the facts here, Chrysler's failure to locate the agreement until June 2016 is understandable and isn't the type of dilatory conduct that points to a waiver. *See Tri-Star*, **97 F. App'x at 464-66;** *see also Martinez v. Utilimap Corp.*, **No. 14-310, 2015 WL 3932151, at \*9-10 (S.D. Ill. June 25, 2015);** *Leff v. Deutsche Bank AG*, **No. 08-cv-733, 2009 WL 1380819, at \*4 (N.D. Ill. May 14, 2009);** *Berk v. Oppenheimer & Co, Inc.*, **No. 82 C 4928, 1985 WL 625, at \*1 (N.D. Ill. Apr. 12, 1985).**

Failing a lack of diligence from August 2015 to June 2016, the plaintiffs insist that Chrysler wasn't diligent because it didn't discover the arbitration agreement until July 7, 2016, about one month after the dealership turned over a production of documents

that included the arbitration agreement. According to the plaintiffs, Chrysler should have reviewed the third-party production instantly, discovered the arbitration agreement, and then immediately moved to compel. That's too draconian a standard for diligence, one the Court suspects that the plaintiffs wouldn't want foisted on them. A party is required to do "all it could reasonably have been expected to do" to make the earliest feasible determination concerning waiver, *Cabinetree*, **50 F.3d at 391**, but that standard doesn't require perfection or perfection with the benefit of hindsight. Reasonableness is the touchstone, and Chrysler's diligence was reasonable here. It gained access to the agreement when the dealership responded to the subpoena in early June, and given the discovery that was occurring at the same time, it was understandable for Chrysler to not review that production until shortly before Ms. Brown's deposition. Things might be different if Chrysler had an inkling that the Browns might be subject to an arbitration provision, but there's nothing to indicate that here—neither the complaint nor the Browns' responses to discovery suggested that they signed a discount contract. On these facts, the one month delay between Chrysler obtaining the agreement and locating the agreement doesn't point to a lack of reasonable diligence on Chrysler's part. *See Tri-Star*, **97 F. App'x at 465-66**; *Deputy v. Lehman Brothers, Inc.*, **No. 02-C-718, 2004 WL 3770574, at 8 (E.D. Wis. Aug. 16, 2004)**; *see also Grabowski v. Robinson*, **817 F. Supp. 2d 1159, 1166-67 (S.D. Cal. 2011) (no waiver of right where party moved to compel arbitration within one month of Supreme Court decision creating potential arbitration right)**; *Ketchum v. Almahurst Bloodstock IV*, **685 F. Supp. 786, 796 (D. Kan. 1988) (same).** And taking all of the

circumstances in total, the Court doesn't believe that Chrysler acted inconsistently with its right to arbitrate or that it knew of a chance of arbitration but attempted to invoke the machinery of the Court only to jump to arbitration when its efforts with the Court went to pot. So there was no implied waiver of Chrysler's right to arbitrate.

With waiver disposed of, the Court must decide whether to order arbitration. All agree that the Advantage agreement is subject to the Federal Arbitration Act, which provides that a written agreement to arbitrate disputes that arises out of a contract involving transactions in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." **9 U.S.C. § 2.** Congress passed the Act to serve three basic goals: to reverse the longstanding judicial hostility to arbitration, to place arbitration agreements on the same footing as other contracts, and to overcome courts' refusals to enforce agreements to arbitrate. *AT&T Mobility LLC v. Concepcion*, **563 U.S. 333, 344 (2011);** *Allied-Bruce Terminix Cos. v. Dobson*, **513 U.S. 265, 270 (1995).** The Act limits the Court's analysis when an arbitration agreement is at issue—if an arbitration agreement is enforceable and a dispute before the Court falls within its scope, the parties should go to arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, **470 U.S. 213, 218 (1985).**

The Browns claim that the Advantage agreement isn't enforceable because it is substantively and procedurally unconscionable. That kind of defense is one that the Federal Arbitration Agreement allows—if the agreement is unconscionable under the relevant state law it isn't valid, and thus arbitration under the federal Act isn't proper. *Circle v. Chase Bank USA*, **583 F.3d 549, 554 (8th Cir. 2009).** The Browns maintain that

8

Missouri law applies here and the defendants don't dispute that premise, so the Court will apply that law.  Under Missouri law, unconscionability is a fact-specific inquiry, which focuses on whether the contract terms are so one-sided as to oppress or unfairly surprise a party or whether the terms show an overall imbalance in the respective rights and obligations of the parties.  *Brewer v. Missouri Title Loans*, **364 S.W.3d 486, 493 (Mo. banc 2012).**  High pressure sales tactics, unreadable fine print, misrepresentation, or unequal bargaining positions can all raise the specter of unconscionability, as can arbitration terms that are unduly harsh.  *See id.*  The Missouri Supreme Court has set a high watermark for unconscionability, noting that unconscionability exists when there is an "inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation of the inequality of it." *Eaton v. CMH Homes, Inc.*, **461 S.W3d 426, 433 (Mo. banc 2015).**

The Advantage agreement wasn't unconscionable under Missouri law.  There's nothing to suggest that the Browns were pressured into signing the agreement, that the arbitration provision was hidden in the discount contract, or that anyone lied to the Browns about the arbitration provision.  In addition, the terms, at least on their face, don't appear unduly harsh—the Browns received a lower price for their vehicle, and in exchange they agreed to litigate warranty claims in an arbitration forum.  To prove up unconscionability, the Browns note that the Advantage agreement was a contract of adhesion with the typical disparity in bargaining power, but those points on their own don't create an unconscionability problem.  *See Robinson v. Title Lenders, Inc.*, **364 S.W.3d 505, 515 (Mo. banc 2012) ("[A] court should not invalidate an arbitration**

9

**agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as those are hallmarks of modern consumer contracts generally.").** The Browns also note that the agreement has harsh and oppressive terms because they are required to contact their dealership and then Chrysler before starting arbitration, but two pre-arbitration phone calls can hardly be labeled oppressive, especially under the standard put forth by the Missouri Supreme Court in *Eaton*. The Browns go on to hint that the arbitration process through the National Center for Dispute Settlement might be "slanted" in Chrysler's favor because Chrysler arranged for that process with the Center. They make no developed argument on that front, though, and there's nothing to suggest that the Center is biased—the Center is an independent agency and the agreement contemplates the appointment of an independent decision-maker.[1]

So the arbitration agreement is enforceable, and the only remaining question, at least as it concerns whether to compel arbitration at all, is what claims, if any, fall within the arbitration agreement's scope. The Browns concede that the implied warranty claims and the Magnuson-Moss Act claims fall within the arbitration agreement's scope and thus should go to arbitration if the Advantage agreement is enforceable, but they

---

[1] The Browns finally claim that the Advantage agreement is unconscionable because it might require some of the non-warranty claims in this case to be submitted to arbitration while at the same time disclaiming the arbitrator's authority to rule on those claims. As the Browns see it, if those claims must be submitted, they would fall into a black hole and never be litigated, for the arbitrator can't decide them. The Court needn't resolve whether this kind of mousetrapping creates an unconscionability problem, for the Browns' premise is wrong. As the Court will explain in more detail below, the non-warranty claims here don't fall within the scope of the arbitration agreement, meaning that this basis for unconscionability must be rejected.

dispute that the other non-warranty claims in this case fall within the arbitration language in the contract. Whether a claim is subject to an arbitration clause is an ordinary question of contract interpretation: if the language in the arbitration agreement extends to "any" or "all" disputes, almost every claim will be subject to arbitration, but if the language isn't so broad, some of the claims might not be referable to arbitration. *E.g., Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985); *Stone v. Doerge*, 328 F.3d 343, 345-46 (7th Cir. 2003). In assessing whether a particular claim falls within the scope of an arbitration clause, the Court must focus on the underpinnings of the claim rather than the legal theory presented, so as to prevent clever drafters from pleading around an obligation to arbitrate. *E.g., CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 173 (3d Cir. 2014); *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*, 567 F.3d 1191, 1198 (10th Cir. 2009).

By its terms, the arbitration clause here is limited to warranty disputes, and the non-warranty claims brought by the Browns don't fall within its ambit. The clause in the agreement says that the signor will not be able to bring any "warranty disputes relating to this vehicle," and the incorporated rules for the program state that "any warranty dispute" must go to arbitration but that "other types of disputes, such as those involving allegations of discrimination, personal injury, or property damage, and/or other product liability claims," will not be reviewed by the arbitrator. The obvious reading is that other, non-warranty claims can't be decided by the arbitrator and aren't encompassed by the arbitration clause, a reading confirmed by the fact that the arbitration rules incorporated into the agreement state that the arbitrator will review

"only vehicle disputes" involving a warranty on a Chrysler vehicle. And a look at the complaint confirms that the Browns' non-warranty claims—for common law fraud, negligence, consumer protection violations, and unjust enrichment—aren't warranty claims that are merely dressed up in non-warranty garb. To be sure, all of the non-warranty claims in this case reference the purported defects in the affected vehicles, but those claims don't all depend on a breach of warranty to succeed—even the unjust enrichment claim is partly predicated on fraud and only requests relief should the warranty claims fail as a matter of law. Chrysler says all of the Browns' claims should go to arbitration in light of the Supreme Court's decision in *Mitsubishi Motors*, **473 U.S. at 614**, and the Seventh Circuit's decision in *In re Oil Spill by Amoco Cadiz Off Coast of France*, **659 F.2d 789, 791 (7th Cir. 1982)**, but those cases held that all of the claims had to go to arbitration because the arbitration clause was extremely broad. The arbitration clause here isn't nearly as extensive as the clauses in those two cases, and only the Browns' warranty claims fall within the arbitration provision's scope.

Because only part of this suit is subject to arbitration, the last issue for the Court to resolve is what to do with this case while the Browns finish arbitration. A stay is mandatory for the arbitrable claims, *see* **9 U.S.C. § 3,** and the Browns seem to concede a stay for their Magnuson-Moss and implied warranty claims against Chrysler. As for the Browns' non-arbitrable claims, a stay there is left to the Court's discretion. *Pryner v. Tractor Supply Co.*, **109 F.3d 354, 361 (7th Cir. 1997).** That discretion is guided by the risk of inconsistent rulings, the extent to which the Browns and Chrysler will be bound by the arbitrator's decision as it concerns the Browns' other claims, and the prejudice

12

that may result from any delay. ***Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971-72 (7th Cir. 2007).** The Court may also consider the chance that the arbitration might help resolve, or at least shed light on, the non-arbitrable claims. *Id.*

Applying those discretionary considerations here, the Court is of the view that a stay as to the Browns remaining claims against Chrysler makes sense, but only if it is for a limited duration so as not to delay this case excessively. On one side of the scale, the Browns didn't agree to arbitrate those claims, and they have a right to continue to press their non-arbitrable claims to a swift resolution. A slow speed case means a slow speed recovery, and that's a clear source of prejudice. On the other side of the scale, some of the issues relevant to the Browns' non-warranty claims, especially damages issues under Missouri law, could be relevant to their warranty claims too. If this Court beat the arbitrator to the punch on a ruling concerning the non-warranty claims under Missouri law, say by ruling that the diminished value damages weren't viable in a fraud suit under Missouri law, the arbitrator may feel hamstrung by the Court's decision as it concerns the warranty claims under that same source of law, or he could reject the Court's logic and all involved could face inconsistent decisions. In addition, there is a chance that the arbitrator's ruling might press the Browns to drop their suit against Chrysler or press Chrysler to settle the entirety of the Browns' case against them, thereby saving the Court and the parties' resources. These points swing in favor of a stay, but only a limited one, especially in light of the fact that the contract here contemplates a very brief arbitration proceeding. The Court will stay the Browns' remaining claims as to Chrysler for a period of sixty days from the date of this order.

The Court must also decide whether to stay the other claims in this case, namely the Browns' claims against Harmon under Missouri law and the other plaintiffs' claims against Chrysler and Harmon under Michigan and Illinois law. The propriety of that stay isn't governed by the automatic stay provisions of the Federal Arbitration Act, but instead by the doctrine of parallel proceeding abstention. *IDS Life Ins. Co. v. SunAmerica, Inc.*, **103 F.3d 524, 529-30 (7th Cir. 1996).** Under that doctrine, whether a stay for non-signatories to an arbitration agreement is proper is a matter entrusted to the Court's discretion, guided, as all of the parties concede, by the need to avoid inconsistent judgments and unnecessary expense, by the need to give full effect to the arbitration agreement, and by other pragmatic considerations. *E.g.*, *Dr. Robert L. Meinders, D.C. Ltd. v. Unitedhealthcare, Inc.*, **No. 14-549, 2016 WL 3855032, at \*4 (S.D. Ill. July 15, 2016);** *Nakamura Trading Co. v. Sankyo Corp.*, **No. 05-cv-7205, 2006 WL 1049608, at \*4-5 (N.D. Ill. Apr. 19, 2006);** *Allied Van Lines, Inc. v. Orth Van and Storage, Inc.*, **No. 04-6004, 2005 WL 1563111, at \*3 (N.D. Ill. June 3, 2005).**

These discretionary considerations lead the Court to find that a stay is proper as to Harmon concerning all of the Browns' claims in this suit. As to the Browns' warranty claims against Harmon, those are quite similar to their warranty claims against Chrysler—both involve a failure on Chrysler and Harmon's part to create a system that wasn't vulnerable to hacking. If this Court were to keep the Browns' implied warranty claims against Harmon going while the Chrysler implied warranty claims were stayed, this Court could make rulings inconsistent with the arbitrator's rulings on quite similar issues. At the least, the Court's rulings as to Harmon could affect the arbitrator's

decisions on those same claims as to Chrysler, and the arbitrator should have an opportunity to rule on the Missouri warranty claims without the Court pressing his hand.  As to the Browns' other claims against Harmon, a ruling by this Court on the viability of the damages aspect of those claims under Missouri law could impact the arbitrator's ruling as to the warranty claims against Chrysler, and again, the arbitrator should have the opportunity to rule independently.  At the least, depending on how things go for the Browns in arbitration, they might decide to drop their suit or Harmon and Chrysler may opt to settle with them.  At the end of the day, staying the Browns' claims against Harmon preserves judicial time, saves party expense, and avoids the risk of inconsistent rulings.  As was the case with the Chrysler stay, though, this stay should be equally brief, so as to minimize the prejudice suffered by the Browns, who will be forced to slow some of their non-arbitrable claims while they proceed with arbitration.

While a stay as to the Browns is proper, a stay as to the other plaintiffs' claims against Chrysler and Harmon makes much less sense.  For one, those claims are brought under Michigan and Illinois law, not Missouri law, so the chance that this Court will rule in a way that is inconsistent with the arbitrator or that the arbitrator will rule in a way that is inconsistent with the Court is slim.  In addition, there's also little chance that the Court's rulings as to the Michigan and Illinois claims would press the arbitrator's hand as to the Missouri claims.  Once more, the other plaintiffs in this case weren't signatories to the Advantage agreement, and no one suggests that Harmon is in privity with Chrysler, so there's almost no chance that Harmon or the other plaintiffs in this suit would be bound by the arbitrator's decision as to the Browns.  Finally, judicial

economy doesn't counsel in favor of a stay. It's doubtful that the other plaintiffs in this case will drop their claims under Michigan and Illinois law if the arbitrator rules that the Browns' warranty claims are bunk under Missouri law, and it's likewise doubtful that Chrysler and Harmon would settle with the other plaintiffs if the arbitrator thought that the Browns' Missouri warranty claims against Chrysler had merit. Given all of these points, the Court will not stay the case as to the other plaintiffs' claims.

To sum up, Chrysler's motion to compel arbitration (Doc. 99) is **GRANTED IN PART and DENIED IN PART**. The Browns are **DIRECTED** to proceed with arbitration on their implied warranty and Magnuson-Moss Act claims. The Court **STAYS** the Browns' implied warranty and Magnuson-Moss Act claims against Chrysler pursuant to Section 3 of the Federal Arbitration Act until arbitration is complete. The Court further **STAYS** the remainder of the Browns' claims against Chrysler and Harmon until **November 22, 2016** pursuant to its discretionary powers. The remainder of this case shall proceed. Chrysler and the Browns are **DIRECTED** to submit a joint report by **November 7, 2016**, regarding the status of the arbitration.

IT IS SO ORDERED.

DATED:  September 23, 2016

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**