IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRIAN FLYNN,                          )
GEORGE BROWN,                         )
KELLY BROWN, and                      )
MICHAEL KEITH,                        )
*on behalf of themselves and all*     )
*others similarly situated,*          )
                                      )
                    Plaintiffs,       )
                                      )
vs.                                   )       Case No. 15-cv-0855-MJR-DGW
                                      )
FCA US LLC, *doing business as*       )
Chrysler Group LLC, and               )
HARMON INTERNATIONAL                  )
INDUSTRIES, INC.                      )
                                      )
                    Defendants.       )

<u>MEMORANDUM AND ORDER</u>

**REAGAN, Chief District Judge:**

In 2015, Brian Flynn, Michael Keith, and George and Kelly Brown—all owners or lessees of Chrysler vehicles—brought suit against Chrysler and Harmon International Industries, seeking to sue on their own behalf and on behalf of a number of other vehicle owners similar to them. Their suit concerns a design flaw in some of Chrysler's 2013-2015 vehicles that received public attention in a 2015 WIRED magazine article. The vehicles in question are equipped with a uConnect system, manufactured by Harmon International, that allows integrated control over the phone, navigation, and entertainment functions throughout the vehicle. Per the plaintiffs, the uConnect system turns the affected vehicles into rolling deathtraps: the uConnect system has design vulnerabilities that allow hackers to take remote control of the vehicle's functions,

1

including the vehicle's steering and brakes, to comical or disastrous effect.  The WIRED article contributed to a voluntary recall by Chrysler, depending on how one sees things, and despite the recall the plaintiffs maintain that the affected vehicles still have a number of vulnerabilities that would allow hackers to access the vehicles' critical and non-critical systems.  Those ongoing vulnerabilities led the plaintiffs to file a class complaint in this Court, seeking monetary damages and injunctive relief.

Flynn, Keith, and the Browns assert a number of claims linked to the uConnect system and the vehicles the system was installed in, each predicated on their home state's law.  Chrysler and Harmon, say the plaintiffs, violated the Magnuson-Moss Act and the implied warranty of merchantability for the affected vehicles under Michigan, Illinois, and Missouri law by putting the vehicles into circulation with the design vulnerabilities; they committed fraud and violated the Michigan, Illinois, and Missouri consumer protection statues when they lied about the vehicles' safety or failed to fully disclose the uConnect vulnerabilities; they were negligent in designing and later fixing the affected vehicles' vulnerabilities; and they were unjustly enriched by virtue of their tortious or fraudulent conduct or their violations of the vehicles' implied warranties. As damages, the plaintiffs say that they overpaid for their vehicles because the vehicles were initially defective; that the ongoing vulnerabilities have diminished their vehicles' value; that the vulnerabilities have put the plaintiffs at risk of injury or death; and that the vulnerabilities have placed the plaintiffs in an ongoing state of fear or anxiety. Chrysler and Harmon have moved to dismiss all or part of the operative complaint on jurisdictional and pleading grounds, and those motions are now ripe for review.

One note is in order concerning another motion Chrysler filed after Chrysler and Harmon moved to dismiss the operative complaint. The two named Missouri plaintiffs in this case, George and Kelly Brown, bought their Chrysler vehicle pursuant to a discount program, and because that discount program included an arbitration clause covering warranty claims against Chrysler, Chrysler has moved to stay this entire case so that the Browns' claims can be addressed before an arbitrator. Harmon supports the motion. By separate order today, the Court granted a limited stay as to the Browns' claims only, but denied a stay as to the other claims in this suit. Accordingly, this ruling will only address the motions to dismiss directed at Plaintiff Flynn's claims (under Illinois law) and Plaintiff Keith's claims (under Michigan law). Any arguments directed at the Browns' claims will be denied without prejudice in light of the stay; Chrysler and Harmon are free to make those arguments again once the stay is lifted.

Chrysler and Harmon make a number of arguments in favor of full or partial dismissal of the Michigan and Illinois claims in this case, but it makes sense to start with their jurisdictional arguments, for if those succeed all or part of the case must end. The two complain the loudest about standing—they insist that the plaintiffs have not alleged the kinds of injuries recognized as viable by the courts, much less ones that are traceable to either entity's conduct. Their reference to "allegations" and the standard they cite in their motions suggests a facial challenge to standing, and for that kind of challenge the Court accepts as true all of the complaint's allegations and construes those allegations in the plaintiff's favor. *Silha v. ACT, Inc.*, **807 F.3d 169, 173 (7th Cir. 2015).** To have standing, a litigant must show that he has suffered a concrete and

particularized injury that is fairy traceable to the challenged conduct and is likely to be redressed by a favorable court decision. *Hollingsworth v. Perry*, **133 S. Ct. 2652, 2661 (2013).** The standing doctrine, grounded as it is in the Constitution's case or controversy requirement, serves a number of practical goals: it limits premature judicial interference with legislation, it prevents the courts from being overwhelmed with cases, and it ensures that the primary victims of wrongful conduct will not have their cases litigated in advance by persons who were only trivially harmed. *Am. Bottom Conservancy v. United States Army Corps of Eng's,* **650 F.3d 652, 656 (7th Cir. 2011).**

Flynn and Keith allege that they have been injured in a variety of ways. The first two injuries—that the uConnect vulnerabilities have exposed them to an increased risk of injury or death if their vehicles were hacked and that they suffer anxiety and fear because of that possibility—both have some standing problems in light of the Supreme Court's holding in *Clapper v. Amnesty Int'l USA,* **133 S. Ct. 1138, 1147 & n.5 (2013)**, that a risk of future injury and the fear of that injury doesn't create standing absent a "substantial" risk that the feared injury will come to bear. Taking the plaintiffs' allegations as true, there's not that kind of risk here. There's no allegation in the complaint that the plaintiffs' vehicles were hacked at all or that their vehicles were actually meddled with in a way that could cause real injury. There is the WIRED article and its author, who was subject to a hack that put the author at some controlled risk for journalistic effect, and there were also reports from thirty people who reported possible hacking-related problems during the course of the voluntary recall. But the WIRED scenario was done to a willing subject in a quasi-laboratory setting who suffered no

4

injury whatsoever, and the vast majority of the recall reports concerned theft-related hacks, having nothing to do with any risk of injury or death.  Only *four* owners in a universe of over a million reported anything close to a safety-related problem—three reported engine stalls and one reported a sudden unintended acceleration that may have been caused by hacking—and there's no allegation that those consumers were actually injured, severely or otherwise.  Once more, the uConnect system has been subject to a recall, and even though Flynn and Keith insist that the recall didn't fix all of the vulnerabilities and offer some developed allegations on that front, the recall still reduces the chances even more that a real world hack will occur and that Flynn and Keith will be injured or killed by virtue of a takeover of their vehicles.  At the end of the day, four unverified safety-related reports and one safety-related hack in a quasi-controlled setting concerning a purported defect that's been in existence since 2013 doesn't add up to a "substantial" risk of harm to the plaintiffs here.  ***See*, *e.g.*, *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) (subjective fear of injury insufficient to create standing when plaintiff had "suffered no adverse health effects" and there was no objective indication of a serious risk of harm); *Simpson v. California Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1022 (S.D. Cal. 2013) (no standing where there was nothing to suggest that ingestion caused actual harm).**

Consider the chain of events that would need to occur for a serious injury to befall Flynn or Keith.  Their automobiles would need to be hacked by a hacker proficient enough to access the vehicles by remote.  The hack would need to occur despite the fact that the recall fixed some of the vulnerabilities referenced in the WIRED

article.  The hacker would need to gain access to the critical systems of the vehicle, and then the hacker would need to hijack those systems in a way that would cause a wreck of the kind of magnitude that could injure or kill.  The plaintiffs don't allege that this chain of events has ever happened to anyone, and the chain looks a lot like the kind deemed too attenuated and speculative to create standing in other cases.  *See Clapper*, **133 S. Ct. 1138 at 1148-50;** *In re African-Am. Slave Descendants Litig.*, **471 F.3d 754, 760-61 (7th Cir. 2006).**  This isn't like a data breach case where cybercriminals who have stolen credit data will likely use that data in the future even if they haven't at the start of a suit, *Remijas v. Neiman Marcus Grp., LLC*, **794 F.3d 688, 694-95 (7th Cir. 2015)**; in this case there is no allegation that a real world hacker has ever hacked the uConnect system to cause injury, nor is there any suggestion that hackers with knowledge of these kinds of vulnerabilities take advantage of them to injure hapless drivers.

So Flynn and Keith lack standing to press injuries based on a risk of injury or death and the fear of that injury.  That doesn't mean that they lack standing across the board, though—standing is evaluated on an injury-by-injury basis, *Davis v. Fed. Elec. Comm'n*, **554 U.S. 724, 734 (2008)**, and Flynn and Keith have two other injuries they wish to press here.  Those two injuries are mirror images of each other: they claim that they overpaid for their affected vehicles because the automobiles had defects at the time they were purchased, and they also insist that the defects have caused an appreciable drop in the value of their vehicles on the market.  Chrysler and Harmon insist that any overpayment or diminution of value is speculative given that no consumer has actually been severely injured or killed by way of the defect, but safety-related defects aren't the

only kinds of defects that could cause a drop in value, and there are enough allegations offered and materials cited by the plaintiffs to suggest a drop, at least at this point in the case.  Market forces alone, pressed along by the 2015 WIRED article exposing safety- and access-related vulnerabilities with the uConnect system, could lead to a reduction in the value of the vehicles, as could reports from some 27 odd consumers during the recall suggesting that their automobiles were remotely unlocked and then robbed by hackers.  And overpayment or a drop in value suffices as an injury for standing purposes.  *E.g.,* *In re Aqua Dots Prods. Liab. Litigation,* **654 F.3d 748, 750-51 (7th Cir. 2011);** *Cole v.* *Gen. Motors Corp.,* **484 F.3d 717, 722-23 (5th Cir. 2007);** *In re Toyota Motor Corp.* *Unintended Acceleration Prods. Liab. Litig.,* **754 F. Supp. 2d 1145, 1162 (C.D. Cal. 2010).**

Chrysler and Harmon brush off the overpayment and diminution cases on the grounds that they all involved situations where the harms from defects had materialized for some group of customers, even if they hadn't materialized for the actual plaintiffs in the case.  That distinction might matter—it stands to reason that there likely wouldn't be much of a loss in value if the defective product wasn't defective at all—but the distinction doesn't hold up here.  *Aqua Dots*, *Cole*, and *Toyota Motor* all involved products where other customers had problems with the product but the plaintiffs luckily ducked them, and there are allegations of similar problems experienced by other consumers here—Flynn and Keith allege that a journalist driving one of the affected vehicles was hacked in real time and his event narrated for the market to read in a national magazine a little over a year ago, and that the narration fed into a recall that involved at least thirty reports of purported hacking of the affected

vehicles.  Those events might not back up a substantial risk of death or injury to Keith and Flynn, but they do provide a foundation for a claim that the affected vehicles were overpriced when they were sold or that the affected vehicles lost value once knowledge of the defects reached the market.  **See Toyota Motor Corp., 754 F. Supp. 2d at 1162-66 (noting that the risk of actual harm from the defect wasn't substantial, but that the "market effect" of the defect was "actual or imminent" and that the non-conclusory allegations of market value loss were sufficient to allege injury in fact).**

It's true that a recall occurred for the affected vehicles in this case, and it's also true that a number of courts have cast suspicious glances at claims of overpayment or diminished value when a recall purportedly fixed all of the problems prior to suit.  **E.g., Hadley v. Chrysler Group LLC, 624 F. App'x 374, 378 (6th Cir. 2015); In re Toyota Motor Corp. Hybrid Brake Marketing Sales Prac. & Prod. Liab. Litig., 915 F. Supp. 2d 1151, 1159 (C.D. Cal. 2013).**  The key phrase is "all of the problems"—if a recall didn't remedy three vulnerabilities out of ten or one vulnerability out of twenty, then it's only logical that there might still be a loss in value on the market despite the manufacturer's efforts.  **See Sater v. Chrysler Group LLC, No. 14-00700, 2014 WL 11412674, at *4 (C.D. Cal. Oct. 7, 2014); In re Toyota Motor Corp., 790 F. Supp. 2d 1152, 1162 (C.D. Cal. 2011).**  Keith and Flynn claim that kind of slip here, and their supporting allegations are far from conclusory—they point out that the WIRED article documented a number of vulnerabilities with the uConnect system, they offer clear allegations as to what vulnerabilities the recall didn't fix, and the documents from the recall offer some doubt as to whether everything is fixed.  If the plaintiffs can prove that the recall didn't fix all

of the defects and that the ongoing vulnerabilities have reduced the market value of their vehicles, the initial overpayment and the subsequent reduced value would qualify as injuries in fact.  Whether it's a small injury or whether the injury isn't legally viable given a doctrine like economic loss are separate questions—all that matters for standing at this phase is that the plaintiffs allege a fair probability of injury.  *E.g., MainStreet Org. of Realtors v. Calumet City, Ill.*, **505 F.3d 742, 744-45 (7th Cir. 2007);** *Am. Bottom*, **650 F.3d at 658.**  Keith and Flynn have alleged such an injury here in spite of the recall, and that's enough.  They've also alleged causation despite the defendants' argument to the contrary: if the defects in the uConnect system still allow hackers to access their vehicles despite the recall, then any lost value would be "fairly traceable" to the uConnect defects, regardless of whether hacking by third parties also contributed.  *Lewert v. P.F. Chang's China Bistro, Inc.*, **819 F.3d 963, 967-68 (7th Cir. 2016).**

Failing a wholesale jurisdictional dismissal on standing grounds, the defendants insist that Flynn and Keith lack standing to bring some of the state law claims raised in this suit.  For instance, Flynn is a resident of Illinois, and the defendants argue that he lacks standing to bring claims under Missouri or Michigan law where he has no connection to those states.   Likewise, Keith is a resident of Michigan, and the defendants maintain that he lacks standing to invoke the laws of Missouri or Illinois.  This argument conflates the standing question with the merits of a claim.  Standing exists if a litigant has been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision—nothing more is required.  *Morrison v. YTB Int'l, Inc.*, **649 F.3d 533, 536 (7th Cir. 2011).**  The question of what state law is properly

invoked by each plaintiff or putative plaintiff is a merits question or possibly a question linked to the propriety of class certification, and federal courts shouldn't conflate that issue with the standing point. ***E.g., Morrison*, 649 F.3d at 536; *Le v. Kohl's Dep't Stores, Inc.*, — F. Supp. 3d —, 2016 WL 498083, at \*12-13 (E.D. Wis. Feb. 8, 2016); *Cohan v. Medline Indus., Inc.*, No. 14-cv-1835, 2014 WL 4244314, at \*2 (N.D. Ill. Aug. 27, 2014).** Chrysler and Harmon's argument, premised entirely on standing, must be rejected.

With the standing point resolved, Chrysler (but not Harmon) has two more jurisdictional arguments. The first concerns collateral attack: Chrysler says that Flynn and Keith can't take issue with the National Highway Traffic Safety Administration's ruling that there are no more problems with the uConnect system through this more conventional lawsuit, but must challenge that purported ruling through the Administrative Procedure Act. It's a tough pill for the Court to swallow that all plaintiffs are barred wholesale from bringing a typical products liability lawsuit for damages merely because a federal agency has coordinated a recall and made findings as a part of that process, and Chrysler doesn't make that pill any more palatable with a developed argument—it doesn't cite one case where a Court extended the collateral attack doctrine to a case like this. The Court needn't resolve the more difficult question of whether collateral attack applies in these circumstances, though, because the collateral attack point can be disposed of on more mundane grounds. To create a collateral attack problem, Chrysler would need to show that the defect issue was finally determined by the Administration, *see Peterson v. Johnson*, **714 F.3d 905, 911-12 (6th Cir. 2013); *State Farm Mut. Auto. Ins. Co. v. Indus. Pharmacy Mgmt., LLC*, No. 09-**

**00176, 2009 WL 2448474, at \*4-5 (D. Haw. Aug. 11, 2009)**, and the tenor of the Administration's findings don't suggest that kind of finality or confidence.  Far from issuing any kind of ultimate determination on the comprehensiveness of Chrysler's voluntary recall, the Administration said, in its recall findings, that it only "appear[ed]" that the defects were addressed, and elsewhere said that it was making no conclusive ruling on whether the defects were cured by way of Chrysler's voluntary recall. Without a more conclusive determination by the Administration as to a defect, there's nothing for the plaintiffs to attack collaterally through this suit.

Chrysler's second jurisdictional argument concerns preemption.  According to Chrysler, many of the declaratory requests in the complaint must be dismissed because they are poorly veiled attempts to institute a court-ordered recall and thus are preempted by the Motor Vehicle Safety Act, specifically the parts of the Act that set up procedures for the National Highway Traffic Safety Administration to use as a part of any recall.   The touchstone of any preemption analysis is congressional intent, and that intent can be stated explicitly or implied by the federal statute's structure and purpose. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n,* **505 U.S. 88, 98 (1992).**  There's nothing to suggest that the Safety Act explicitly preempts all state claims; to the contrary, the savings clause specifically preserves state law warranty obligations and other rights and remedies provided by state law.   *See* **49 U.S.C. § 30103(d).**   That said, implied preemption can still limit a state claim or order despite the presence of a savings clause. If a part of a federal statute occupies a field so thoroughly that it leaves no room for the States to supplement it, or if state claims or orders serve as an obstacle to the execution

11

of Congress' purpose or frustrates that purpose by interfering with the methods Congress selected to achieve a federal goal, the state efforts are preempted.  *Indiana Bell Telephone Co., Inc. v. Indiana Util. Reg. Com'n*, **359 F.3d 493, 497 (7th Cir. 2004).**

Using state law, as Keith and Flynn are trying to do here, to obtain declaratory-style recall relief would create an implied preemption problem, for court ordered recalls would interfere with the methods set up for recalls by the Safety Act.  The Act sets forth a comprehensive scheme for prospective relief from dangerous features in vehicles—it creates a notification procedure if and when the Secretary of Transportation determines that a vehicle contains a defect; it affords the Secretary discretion to determine the type of notification that consumers need; and it provides the Secretary with the authority to determine that a defect or noncompliance is inconsequential to safety, thereby exempting the manufacturer from providing a remedy.  *See* **49 U.S.C. §§ 30118 & 30119.** Allowing the courts to set up their own system for motor vehicle recalls has to conflict with those procedures—any separate system would bypass the Secretary and the discretion entrusted to her, including her discretion to decide against any recall because the defect was inconsequential, and would, at the least, complicate the administrative route set up by the statute by authorizing a parallel proceeding.   This kind of "methods" conflict was enough to create a preemption problem for a state claim that would have set up different methods in the Clean Water Act context in *International Paper Co. v. Ouellette*, **479 U.S. 481, 492-95 (1987)**, and it was enough to create the same kind of problem for state orders that would have led to different procedures in the Telecommunications Act context in *Wisconsin Bell v. Bie*, **340 F.3d 441, 444 (7th Cir.**

**2003)**.  The logic follows for the Motor Vehicle Safety Act.  *Lilly v. Ford Motor Co.*, No. 00 C 7372, 2002 WL 84603, at \*4-6 (N.D. Ill. Jan. 22, 2002); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 153 F. Supp. 2d 935, 944-48 (S.D. Ind. 2001).

Keith and Flynn's main argument against preemption is that there is no conflict between state recalls and the purpose of the Motor Vehicle Safety Act, for both seek to increase safety.  The problem is that a state law can be preempted if it interferes with the actual goal of a federal statute or if it interferes with the methods by which the federal statute set to achieve the federal goal, *Indiana Bell*, 359 F.3d at 498; *Wisconsin Bell*, 340 F.3d at 445, and a court-supervised recall would run roughshod over the recall procedures put forth in the Motor Vehicle Safety Act for an agency-coordinated recall, *In re Bridgestone/Firestone*, 153 F. Supp. 2d at 946-47.  To be sure, a few district courts, led primarily by the Northern District of California's decision in *Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208, 1217-18 (N.D. Cal. 2002), rely on Keith and Flynn's logic to find that the Motor Vehicle Safety Act doesn't preempt court-ordered recalls, but given the reasoning in the *Bridgestone/Firestone* case and the Seventh Circuit's conclusions in the *Indiana Bell* and *Wisconsin Bell* cases, the Court doesn't find those other district court opinions all that persuasive within this circuit.

So Flynn and Keith can't use state law claims to secure a recall.  The question remains whether the declaratory requests in their complaint go that far—that is, after all, the only basis advanced by Chrysler for dismissal of those requests.  Out of the declaratory requests targeted for dismissal by Chrysler, the plaintiffs want a declaration that the affected vehicles are defective, that the defects are safety-related, that Chrysler

13

and Harmon be financially responsible for notifying the class of the defects, and that Chrysler and Harmon be ordered to remedy the defects in the vehicles or refund the purchase price.  Only the last one clearly amounts to a recall order, so only it must be dismissed on preemption grounds at this phase.  Chrysler doesn't lay out, in any real detail, how the other three declaratory requests amount to a full-blown judicial recall, so they aren't grist for a preemption-based dismissal for now.  The Court can better determine the propriety of the remaining declaratory requests at a later point, with the benefit of more developed argument from one or both of the defendants.[1]

That resolves all of the jurisdictional points, leaving Chrysler and Harmon's arguments that some or all of Flynn and Keith's complaint should be dismissed for failure to state a claim.  Chrysler (but again not Harmon) maintains that all of their claims must go for failure to plead any legally cognizable damages—according to Chrysler, the plaintiffs' operative complaint doesn't offer any facts to back up a loss in value in their vehicles, and thus the damages asserted are entirely conclusory.  That's wrong.  The operative complaint documents the 2015 WIRED article, explains the recall process, and provides fairly developed allegations as to how the recall didn't go far enough, thereby causing damage to the plaintiffs in the form of overpayment and lost

---

[1] For similar reasons, the Court won't dismiss the remaining declaratory requests on primary jurisdiction grounds, at least at this point.  Chrysler maintains that the National Highway Traffic Safety Administration has primary jurisdiction over most of the declaratory relief requests left in this case and that the Court should defer to it to execute that kind of relief, but Chrysler's argument is perfunctory—it is all of four sentences long.  Chrysler doesn't lay out the doctrine, and worse yet it doesn't explain how the remaining declaratory relief requests that it targets for dismissal are similar enough to a recall as to fall within the "special competence" of the Administration.  *See Bussian v. DaimlerChrysler Corp.*, **411 F. Supp. 2d 614, 629 (M.D.N.C. 2006).**

value.  That's enough to plead damages under the federal standards at the motion to dismiss stage.  *See Tamoya v. Blagojevich*, **526 F.3d 1074, 1084-85 (7th Cir. 2008) (pleadings are sufficient when the allegations give the defendant "sufficient notice to enable him to begin to investigate and prepare a defense");** *see also Smolinksi v. Oppenheimer*, **No. 11-C-7005, 2012 WL 2885175, at \*4 (N.D. Ill. July 11, 2012).**  It's true that a number of circuits have expressed doubt that some states would recognize the viability of those types of damages in a contract or fraud case, but those rulings haven't resolved the question of whether those damages are bunk in every state, and they have hinted that certain states (like Michigan) might allow for them.  *E.g., In re Bridgestone/Firestone, Inc.*, **288 F.3d 1012, 1016-17 (7th Cir. 2002);** *Cole*, **484 F.3d at 725-26.**  The question for now, then, is whether Illinois or Michigan forecloses claims with the kinds of overpayment damages at issue here, and Chrysler doesn't develop that argument, at least for its wholesale attack on the entirety of the amended complaint. Until Chrysler lays out how those states don't recognize the damages for the claims here or says that it has reviewed Michigan and Illinois law and found nothing on point, the Court isn't in a position to dismiss the Michigan and Illinois claims at this time.

Failing a complete dismissal of the case for want of damages, Chrysler argues that many of the damages asserted in this case must be dismissed as to specific claims or specific plaintiffs.  In light of the Court's ruling above that Keith and Flynn only have standing to pursue overpayment and diminished value injuries, most of Chrysler's damages-related dismissal arguments are now moot.  This includes the "higher probability of injury or death"- and the "fear and anxiety"-related damages for the

Magnuson-Moss Warranty Act claims, the "fear and anxiety"-related damages as to all counts, and the "high probability of injury or death"-related damages as to all counts. The only other damages claim that Chrysler wants dismissed is Plaintiff Keith's claim—according to Chrysler, Keith leased his car, so he couldn't overpay or have any diminished value damages. It's probably true that Keith couldn't have lost value, but it's plausible that Keith was overcharged for his lease because of the ongoing defects in his vehicle, and that overcharge could constitute damages. Because Chrysler hasn't cited any case suggesting that those damages aren't recognized in Michigan or Illinois, the Court isn't prepared to dismiss Keith's entire case at this stage.

Chrysler and Harmon next argue that all of the implied warranty claims must be dismissed for several reasons, chief among them that there was no defect alleged and, even if there was, most states don't allow for a breach of implied warranty claim where the plaintiffs haven't alleged a manifestation of a defect that made the car unfit for transport. As to the first point, the complaint plainly enumerates design vulnerabilities in the uConnect system and the vehicles that the system was installed in, and that's enough to allege a defect at this stage of the case. As to the second point, it's true that some states seem to have limited implied warranty claims to defects which have manifested in a way as to cause real harm to the vehicles, but the critical question here is whether Illinois or Michigan has limited their law in that fashion, and the defendants' arguments on that point are a bit conclusory. Chrysler cites two federal cases and one Missouri case for the proposition, but it doesn't offer any real analysis as to how the circumstances of those cases are similar to this one, nor does it lay out why that law has

anything to do with Michigan or Illinois law.  Meanwhile, Harmon offers more cases, but its argument is three sentences long and its authority is offered in a string citation—there's no real depth of treatment.  The reason for Chrysler and Harmon's brevity seems understandable: the defendants, faced with a twenty page limit on their briefs and a number of arguable points in support of dismissal of the one-hundred-plus page complaint filed by the plaintiffs in this case, have limited some of their arguments to a few sentences.  Some of their arguments are so simple and straightforward as to be ably made with little ink, but this one isn't.  The point seems to be one of debate among some of the states, ***Bridgestone/Firestone.*, 288 F.3d at 1016-17; *Cole*, 484 F.3d at 725-26**, and given that uncertainty, the Court won't dismiss the warranty claims under Michigan or Illinois law for want of viable damages at this phase.  Chrysler and Harmon are free to raise more developed arguments on this front at a later point in the proceedings.

Chrysler and Harmon offer two other reasons to dismiss the implied warranty claims, one concerning pre-suit notice and the other concerning privity.  The pre-suit notice requirement does away with Keith's implied warranty claim under Michigan law, for Michigan requires pre-suit notice without exception (a point that the plaintiffs don't contest).  *See Johnson Controls, Inc. v. Jay Indus, Inc.*, **459 F.3d 717, 729-30 (6th Cir. 2006).**  Flynn's Illinois claim can't be so easily dismissed on notice grounds, though, as Illinois allows for an exception to notice when the defendants already know of the defect as to the entire product line, ***Stella v. LVMH Perfumes & Cosmetics, USA, Inc.*, 564 F. Supp. 2d 833, 837 (N.D. Ill. 2008)**, and there's enough pled in the complaint here about Chrysler and Harmon's knowledge to make a dismissal on notice grounds

untenable at this early point.  As to privity, it's true that Illinois limits implied warranty claims to the direct seller when the only recovery is for economic losses, but a lack of explicit privity doesn't doom a claim if the seller was an agent of the defendant.  ***Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029-30 (Ill. 1988).**  The plaintiffs make no argument about an agency relationship as to Harmon, so the Illinois warranty claim against Harmon must be dismissed, for only economic damages are viable here.  The plaintiffs do allege an agency relationship between Chrysler and the sellers, though, and there are just enough facts pled about that relationship to make dismissal at this point inappropriate.  ***See In re Rust-Oleum Restore Marketing, Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 807 (N.D. Ill. 2016).**  So Flynn's Illinois implied warranty claim can proceed as to Chrysler, but that claim must be dismissed as to Harmon, and Keith's implied warranty claims must be dismissed in full.

With the implied warranty claims settled for now, next up are Keith and Flynn's Magnuson-Moss Act claims, which the defendants say must be dismissed for the same reasons that the Michigan and Illinois implied warranty claims had to be dismissed. The Magnuson-Moss Act allows for a federal suit for breach of an implied warranty arising under state law, so the state and federal implied warranty claims usually rise and fall together.  ***E.g.*, *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 920 (9th Cir. 2014); *Cooper v. Samsung Elec. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010).**  The defendants want the Magnuson-Moss Act claims dismissed primarily for a lack of privity, and the federal Act incorporates the implied warranty privity requirements of the States—if a state implied warranty claim must be dismissed for want of privity, so

too must the Magnuson-Moss Act claim. *Voelker v. Porsche Cars North America, Inc.,* *353 F.3d 516, 525-26 (7th Cir. 2003).* For the reasons the Court already laid out above, the Illinois Magnuson-Moss Act claim against Harmon must be dismissed for want of anything to suggest privity, but the Illinois Magnuson-Moss Act claim against Chrysler can't be dismissed on privity grounds. The Michigan Magnuson-Moss Act claims against Harmon and Chrysler can't be dismissed on privity grounds either, as Michigan has abandoned the privity requirement for implied warranty claims. *Montgomery v.* *Kraft Foods Global, Inc.,* *822 F.3d 304, 309 (6th Cir. 2016).*

Harmon and Chrysler offer three other reasons to dismiss the Magnuson-Moss Act claims in the entirety, but all of them require little discussion. Like the implied warranty claims, they want the Magnuson-Moss Act claims dismissed for want of an alleged defect, but as the Court already said, the plaintiffs have alleged a defect here. Harmon and Chrysler also want the federal claims dismissed for want of viable warranty damages under Michigan and Illinois law, but their arguments on that front are too undeveloped for the Court to take up now. Finally, they ask that the Magnuson-Moss Act claims be dismissed for lack of pre-suit notice. The rub is that the Magnuson-Moss Act has its own notice provision, and it allows a putative class action to continue to the certification stage without pre-suit notice—after which notice and an opportunity to cure must be provided by the named plaintiffs before the case can proceed further. *See* 15 U.S.C. § 2310(e); *see also Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1004 (D.C. Cir. 1986); *In re Shop-Vac Mktg. & Sales Prac. Litig.,* 964 F. Supp. 2d 355, 362 (M.D. Pa. 2013). This is a class case, so a lack of pre-suit notice doesn't lead to dismissal for now.

Flynn and Keith next assert common law fraud claims under Michigan and Illinois law—they claim that Chrysler and Harmon made false statements about the uConnect system and failed to adequately disclose the failures in that system to the plaintiffs and other consumers.   Keith's problem is that his fraudulent misrepresentation and omission claims suffer from a fatal flaw, one linked to the economic loss rule and how that doctrine is applied under Michigan law.  As no one disputes, Michigan applies that rule to fraud claims—Michigan precludes recovery for economic losses resulting from the failure of a product to live up to a buyer's expectations, reasoning that those claims are best channeled through the law of contract and warranty and not the law of tort.  *Huron Tool & Eng'g Co. v. Precision Consulting Servs.*, **532 N.W.2d 541, 543-44 (Mich. Ct. App. 1995).**  There's an exception to the rule when a plaintiff says that he was fraudulently induced to enter into the purchase contract, but only if the inducement has nothing to do with the quality or character of the goods—if the claim concerns the goods then the fraud claim is again redundant to a warranty claim and, in Michigan at least, caught in the teeth of the economic loss rule. *E.g., Dinsmore Instrument Co. v. Bombardier, Inc.,* **199 F.3d 318, 320-21 (6th Cir. 1999);** *Valleyside Dairy Farms, Inc., v. A.O. Smith Corp.,* **944 F. Supp. 612, 617 (W.D. Mich. 1995).**  Keith's fraud claim concerns the uConnect system, so it must be dismissed.[2]

---

[2] The plaintiffs argue that the fraudulent inducement exception should apply without limit to fraud claims based on non-commercial, run-of-the-mill transactions, but they cite no case that expressly curbs the doctrine in such a fashion, and the cases the Court has found on its own don't back the plaintiffs up.  *See Murphy v. The Proctor & Gamble Co.,* **695 F. Supp. 2d 600, 602, 603, 607 (E.D. Mich. 2010) (applying the doctrine to a suit by private consumers who purchased razor blades);** *see also Stein v. Fenestra Am.,*

As to common law fraud, that leaves Flynn's misrepresentation and omission claims under Illinois law.  Chrysler and Harmon insist that the misrepresentation claim must fail because it wasn't pled with the particularity required by Rule 9, and the two are right to complain.  State law fraud claims raised in federal court are subject to the pleading requirements of Federal Rule of Civil Procedure 9.  *Windy City Metal Fabricators & Supply, Inc., v. CIT Tech. Financing Servs., Inc.*, **536 F.3d 663, 668 (7th Cir. 2008)**.  To clear that rule for a fraudulent misstatement claim, a plaintiff must lay out, among other points, the particulars of reliance:  he must state the misrepresentation that he saw, the date that he saw it, and where he saw it.  *E.g., West Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, **287 F. App'x 81, 88-89 (11th Cir. 2008);** *Evans v. Pearson Enter., Inc.*, **434 F.3d 839, 852-53 (6th Cir. 2006);** *Baldwin v. Star Scientific, Inc.*, **78 F. Supp. 3d 724, 738 (N.D. Ill. 2015)**.  Flynn hasn't satisfied that requirement here.  He has only pled reliance on Chrysler and Harmon's purported misstatements in a cursory way, so the Illinois misstatement claim must be dismissed.

Flynn's fraudulent concealment claim presents a closer question, but considering all of the allegations in the amended complaint, the Court is of the view that this claim passes muster under Rule 9.  For fraudulent concealment claims, a plaintiff must allege the "who, what, when, where, and how" of the omission, and must also allege that the defendant "intentionally omitted or concealed a material fact that it was under a duty to

---

*LLC*, **No. 09-5038, 2010 WL 816346, at \*4-5 (E.D. Pa. Mar. 9, 2010) (applying the doctrine to a suit by private consumers concerning the construction of their home);** *Tietsworth v. Harley-Davidson, Inc.*, **677 N.W.2d 233, 244 (Wis. 2004) (Sykes, J.) (applying the doctrine to a suit by private consumers who purchased motorcycles).**

disclose to the plaintiff." *Wigod v. Wells Fargo Bank, N.A.*, **673 F.3d 547, 571 (7th Cir. 2012).** The amended complaint clears the more mundane "who, what, when" and so on requirements—it states what information was withheld (the extent of the vulnerabilities in the uConnect system), when the information should have been provided (prior to purchase and during the course of Flynn's ownership), who should have provided it (Chrysler and Harmon), and the where and the how (via a public medium). Chrysler and Harmon fault Flynn for not making out some of his allegations with the precision typically seen in fraudulent misstatement claims, but the slight lack of detail is understandable in concealment claims, where it's far more difficult for a plaintiff to enumerate the time, place, and content of the omitted statement. *E.g., MacDonald v. Ford Motor Co.*, **37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014);** *Shifrin v. Assoc. Banc Corp.*, **No. 12-839, 2013 WL 1192766, at \*3 (S.D. Ill. Mar. 22, 2013);** *Baggett v. Hewlett-Packard Co.*, **582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007).** Chrysler and Harmon also insist that the fraudulent concealment claim must be dismissed because Keith hasn't pled that Chrysler and Harmon were under any duty to disclose, but Keith has pled such a duty, and he has backed up that allegation with facts suggesting that Chrysler and Harmon had the kind of superior knowledge about their products that could create a duty to disclose under Illinois law. *E.g., Connick v. Suzuki Motor Co., Ltd.*, **675 N.E.2d 584, 594 (Ill. 1996);** *Lilly v. Ford Motor Co.*, **No. 00-7372, 2002 WL 84603, at \*8-9 (N.D. Ill. Jan. 22, 2002)**. This fraud claim isn't grist for dismissal at this point.

Flynn and Keith also claim that Chrysler and Harmon's misstatements and omissions violated the consumer protection acts of Michigan and Illinois. Chrysler and

Harmon insist that these statutory fraud claims should be dismissed for the same reasons that the common law fraud claims should be dismissed, but their arguments on the consumer protection front are conclusory.  In their opening briefs, the two cite little authority to back up dismissal under Michigan and Illinois' consumer statutes, an especially problematic lapse given that the elements for a common law fraud claim aren't always the same as the elements of a violation of a state consumer protection statute.  As one example, Chrysler and Harmon's initial briefs say that the statutory claims should be dismissed for want of reliance, but they cite nothing to demonstrate that reliance is required for the statutory claims, and it looks as if Illinois and maybe even Michigan don't require the same kind of reliance typically needed for common law fraud claims when it comes to claims raised under their consumer statutes.  *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.,* **250 F.3d 570, 576 (7th Cir. 2001) (Illinois law);** *Van Vels v. Premier Athletic Ctr. of Plainfield, Inc.,* **182 F.R.D. 500, 509 (W.D. Mich. 1998) (Michigan law).**  Again, while the Court is cognizant of the fact that Chrysler and Harmon have kept many of their arguments short in an effort to squeeze everything they can into the Court's page limitations, the Court can't dismiss a set of claims unless Chrysler and Harmon make developed arguments justifying dismissal in their opening briefs, and they haven't done that for the consumer protection claims.[3]

---

[3] Chrysler (but not Harmon) also moves for dismissal of the Illinois and Michigan consumer protection fraud claims because both statutes foreclose claims when the fraud is based on actions "specifically authorized" by a regulatory body.  *See* **815 ILL. COMP. STAT. 505/10b(1); MICH. COMP. LAWS § 445.904(1)(a).**  Chrysler says that most of the fraud claims in this case are based on purported misrepresentations in the recall materials sent to the vehicle owners and thus are immunized under the statutes, but

Chrysler and Harmon next argue that the Michigan and Illinois negligence claims must be dismissed because Flynn and Keith only seek money damages for injury to their products, and thus can't use a negligence claim to secure a recovery under the economic loss rule.   Flynn and Keith concede the premise—they don't refute the application of the rule to a case where a consumer brings a negligence claim for damages to a product alone—and that concession seems right under Michigan and Illinois law, as both states channel those types of claims into the field of contract. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, **435 N.E.2d 443, 450-51 (Ill. 1982);** *Neibarger v. Universal Coop., Inc.*, **486 N.W.2d 612, 619 (Mich. 1992).**   Flynn and Keith's only objection is that the rule doesn't apply to their negligence claims here, as they are also seeking damages for an increased risk of death or injury to them, over and above damages for economic injuries to their vehicles.   But as the Court already said, Flynn and Keith lack standing to pursue injuries for any risk of injury or death.   That leaves them only with economic damages, meaning that the negligence claims must go.

Chrysler and Harmon's final argument is that the Michigan and Illinois unjust enrichment claims must be dismissed.   The two insist that the claims must fail for want of any allegations that Flynn and Keith conferred a benefit on Chrysler or Harmon.   There are allegations of a benefit here, though—Flynn bought his vehicle and Keith leased his, and a consumer likely can confer a benefit on a manufacturer by paying for a

---

their argument on that front is three sentences long, and the question is a nuanced one. *See Bober v. Glaxo Wellcome PLC*, **246 F.3d 934, 940-41 (7th Cir. 2001);** *Federal Ins. Co. v. Binney & Smith, Inc.*, **913 N.E.2d 43, 52 (Ill. App. Ct. 2009).**  With so little offered, Chrysler hasn't met its burden to show that dismissal is warranted.

manufacturer's products through a retailer.  *See Feiner v. Innovation Ventures, LLC*, **No. 12-62495, 2013 WL 2386656, at *5 (S.D. Fla. May 30, 2013)**.  In addition, Chrysler and Harmon say that the unjust enrichment claims must be dismissed because those claims are entirely duplicative of the implied warranty and fraud claims in this suit, but an unjust enrichment claim can be pled in the alternative to fraud or implied contract claims in a case, especially when there are no express contract claims.  *E.g., Disher v. Tamko Building Prods., Inc.*, **No. 14-740, 2015 WL 4609980, at *4 (S.D. Ill. July 31, 2015)**; *Bowlers Alley, Inc. v. Cincinnati Ins. Co.*, **32 F. Supp. 3d 824, 834 (E.D. Mich. 2014)**.

That looks to cover all of the arguments raised by the defendants in the text of their motions and in their many footnotes in favor of dismissal.[4]  To sum up, Chrysler and Harmon's jurisdictional motions (Docs. 66 & 71) are **GRANTED IN PART** and **DENIED IN PART**.  Flynn and Keith lack standing to pursue damages for a risk of harm or a fear of that risk, so the defendants' motions to dismiss any claims linked to those non-economic damages are **GRANTED**, and those claims are **DISMISSED without prejudice**.  Flynn and Keith also cannot seek a court-ordered recall, so Chrysler's motion to dismiss the recall-related request is **GRANTED**, and the recall-related request is **DISMISSED with prejudice**.  The other requests in Chrysler and

---

[4] Every party in this case, some far more egregiously than others, have taken to the practice of relegating large portions of their briefs to footnotes.  The parties are cautioned away from this practice in the future, not only because it's an obvious effort to get around the Court's page limitations, but also because it makes the Court's task of reading the briefs and catching the arguments offered quite difficult.  *See Production & Maintenance Employees' Local 504 v. Roadmaster Corp.*, **954 F.2d 1397, 1407 (7th Cir. 1992)**.  If the parties need additional pages to make a developed argument or to fully respond to another party's argument, they should simply ask the Court for more room.

Harmon's jurisdictional motions are **DENIED**.  Once more, Chrysler and Harmon's motions to dismiss for failure to state a claim (Docs. 68 & 71) are **GRANTED IN PART** and **DENIED IN PART**.  The Michigan implied warranty claim is **DISMISSED with prejudice** as to Chrysler and Harmon for want of pre-suit notice, and the Illinois warranty claim is **DISMISSED without prejudice** as to Harmon for want of any privity allegations.  The Magnuson-Moss Act claim predicated on Illinois law against Harmon is **DISMISSED without prejudice** for want of privity allegations.  The Michigan common law fraud claims are all **DISMISSED with prejudice** on economic loss grounds, and the Illinois common law fraudulent misrepresentation claim is **DISMISSED without prejudice** for failure to plead reliance.  The Michigan and Illinois negligence claims are **DISMISSED with prejudice** on economic loss grounds.  Chrysler and Harmon's remaining motions to dismiss are **DENIED**.

   **IT IS SO ORDERED.**

   **DATED:  September 23, 2016**

         <u>/s/ **Michael J. Reagan**    </u>
         **Chief Judge Michael J. Reagan**
         **United States District Court**