Transcript of:

# Motion Hearing

Brian Flynn, et al v. FCA US LLC, et al.

**Date:** May 5, 2017

**Karen Waugh, CSR**

**Keefe Reporting Company**
618-277-0190
reporter@keefereporting.com

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
         IN THE DISTRICT COURT OF THE UNITED STATES OF AMERICA
               FOR THE SOUTHERN DISTRICT OF ILLINOIS


      BRIAN FLYNN, et al.,          )
                                    )
              Plaintiffs,           )
                                    )
              vs.                   )  Case No.
                                    )  3-15-cv-00855-MJR-DGW
      FCA US LLC, et al.,           )
                                    )
              Defendants.           )
```

MOTION HEARING


        BE IT REMEMBERED AND CERTIFIED that heretofore on
May 5, 2017, the same being one of the regular judicial
days in and for the United States District Court for the
Southern District of Illinois, HONORABLE JUDGE DONALD G.
WILKERSON, United States District Judge, presiding, the
following proceedings were had in open court, to-wit:


                        APPEARANCES:

FOR THE PLAINTIFFS:            ARMSTRONG TEASDALE LLP
                              By Mr. Stephen R. Wigginton


FOR THE DEFENDANTS:

(FCA US)                       THOMPSON COBURN LLP
                              By Ms. Sharon Rosenberg
                              By Mr. Stephen D'Aunoy

(Harman)                       FOLEY & LARDNER, LLP
                              By Ms. Elizabeth Mazzocco
                              (Via telephone)




        Reported by:  Karen Waugh, CSR, RPR
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1                      PROCEEDINGS
                 (May 5, 2017; 9:11 a.m.)
 2

 3              THE CLERK:  The matter of Brian Flynn, et

 4   al., versus FCA US LLC, case number 15-855, is called for

 5   a hearing on Defendant's motion for emergency relief.

 6   Will the parties please identify themselves for the

 7   record?

 8              MR. WIGGINTON:  Good morning, Your Honor.

 9   For the Plaintiffs, Steve Wigginton, W-I-G-G-I-N-T-O-N.

10              THE COURT:  Mr. Wigginton, good morning.

11   For Defendants?

12              MS. ROSENBERG:  Sharon Rosenberg for FCA US.

13              THE COURT:  Miss Rosenberg, good morning.

14   And with you?

15              MS. ROSENBERG:  Good morning, Your Honor,

16   and with me is Steve D'Aunoy, also for FCA US.

17              THE COURT:  I'm sorry.  I didn't get the

18   name.

19              MS. ROSENBERG:  Steve D'Aunoy, D-A-U-N-O-Y.

20              THE COURT:  D-U-A-N --

21              MS. ROSENBERG:  I'll let him.

22              THE COURT:  Okay.

23              MR. D'AUNOY:  It's D, apostrophe, A-U-N-O-Y.

24              THE COURT:  A-U-N-O-Y.  Oh, okay.  I'm
```

Keefe Reporting Company

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
1    sorry.  Yeah.  And how do you pronounce that?
2                   MR. D'AUNOY:  D'Aunoy.
3                   THE COURT:  D'Aunoy.  Mr. D'Aunoy, I'm --
4    oh, here it is.  I didn't see it in the docket.  Okay.
5    Now I see it.
6                   MR. D'AUNOY:  Thank you.
7                   THE COURT:  All right.  Very good.  Good
8    morning.  And for Harman we have on the phone this
9    morning?
10                  MS. MAZZOCCO:  Yes.  Excuse me.  Good
11   morning, Your Honor.  Elizabeth Mazzocco on behalf of
12   Harman.
13                  THE COURT:  Okay.  That's -- Oh, Mazzocco.
14   Okay.  Very good.
15                  MS. MAZZOCCO:  Yes.
16                  THE COURT:  Good morning.  All righty.
17   We're here this morning -- I spoke with you guys last
18   week and I set this for a hearing today on the issue of
19   Defendant FCA more so than Harman.  Harman is more of an
20   interested party, I guess, in this action, and why don't
21   we for the record find out, Miss Mazzocco, you really
22   don't have anything to put forward today, do you?
23                  MS. MAZZOCCO:  No, I don't think so.  I may
24   if it's appropriate comment at the end, but perhaps not.
```

Keefe Reporting Company

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1              THE COURT:  Okay.  Very good.  All right.
 2  Very good.  Now, let me first start off, come on up --
 3  whoever going to talk to me, come on up to the
 4  microphone, and, Mr. Wigginton, you're by yourself, so
 5  come on up.  I would assume it's you.  The first thing I
 6  want to talk about, what's at issue.  The first thing
 7  that's at issue is what was at issue when I talked to you
 8  last week, which was filings in a California court.  Does
 9  everybody agree that that matter has been sealed?
10              MR. WIGGINTON:  Yes, Your Honor.
11              MS. ROSENBERG:  Yes, it's sealed at the
12  moment.  There's a hearing on the issues set for
13  May 16th, so things may change at that point, but for
14  now --
15              THE COURT:  But for today it is sealed.
16              MS. ROSENBERG:  Correct.
17              THE COURT:  That's the first thing I wanted
18  to make sure.  All right.  Now, secondly, there was a
19  supplemental FCA -- I'm sorry -- yeah, FCA filed a
20  supplemental -- I'm trying to see what you called it --
21  supplemental evidence in support of its motion for
22  sanctions, and that was filed last night about 7 o'clock
23  and -- 7, 7:30.  We weren't here to get it, okay, so
24  actually, when we were preparing for this hearing, we
```

Page 4

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

1    actually saw that this morning.  Mr. Wigginton, have you

2    had an opportunity to see the supplemental?

3                 MR. WIGGINTON:  No, Your Honor.  Yesterday I

4    had to suddenly go to Vanderbilt to pick up my son and --

5    because my wife was afraid to drive in the rain, and I

6    didn't get home until late last night.  I saw it this

7    morning.

8                 THE COURT:  All right.  To the extent

9    that -- As I read it, I think the issues in the

10   supplemental track pretty closely the issues in the

11   initial complaint by FCA, so I don't know -- and again,

12   if you want -- you know, we always believe in due

13   process.  If you -- At the conclusion of this hearing,

14   Mr. Wigginton, if you think it's necessary to get

15   something in the record regarding that supplemental, the

16   Court will of course allow that.  So now, with that said,

17   let's take up the first issue and see if we -- I

18   looked -- I try to find things we can agree on, okay, and

19   we've agreed that the matter in California as we speak

20   today is sealed.  Let's see if we can find another area

21   of agreement.  FCA as the movant here has the burden of

22   convincing me that the protective order has been

23   violated.  Do we all agree that the burden is on

24   Defendant FCA at this point?

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1              MS. ROSENBERG:  Yes, Your Honor.

 2              THE COURT:  All right.

 3              MR. WIGGINTON:  Yes, Your Honor.

 4              THE COURT:  All right.  Very good.  All

 5    right.  Now, as I understand it -- and you guys chime

 6    in -- I want to make sure the gist of what we're

 7    complaining about is that confidential material that was

 8    the subject of a protective order has been used in

 9    violation of that order.  That's the bottom line, okay?

10    As I understand Plaintiffs' argument is that these --

11    this is information that was generally available, they

12    have not violated the confidential -- the protection

13    order, and if they did, there's no harm, no foul, because

14    this is information that was generally available.

15    Defendants, however, say they have violated it and they

16    want sanctions, some of which you proposed are pretty

17    drastic.  So that's kind of my understanding as a general

18    matter of where we are.  If I didn't frame the issues the

19    way you guys see them, now's your opportunity.

20              MR. WIGGINTON:  I think you framed it

21    perfectly.

22              MS. ROSENBERG:  I --

23              THE COURT:  I don't have to be perfect.  If

24    it's acceptable, that's fine.
```

Page 6

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
1              MS. ROSENBERG:  I think you framed it
2    perfectly in terms of Plaintiffs' position, yes.
3              THE COURT:  All right.  Very good.  Well,
4    why don't you now -- what I have in front of me is -- the
5    first place I want to go, I have the -- what's filed here
6    as Exhibit B, and it was what was filed in the California
7    court, and there's some highlighted portions that was
8    sent to the Court that FCA specifically complains about
9    in violation of the protective order.  I also have the
10   protective order, which is -- for the record, the
11   documents I'm dealing with are Doc 148, which is
12   stipulated and amended protective order for confidential
13   material, so the record is clear.  That's Doc 148, and
14   the other document that I was referring to was Doc 173,
15   which is sealed in the court file, and the appropriate --
16   as I look at the appropriate -- what I believe to be
17   appropriate portion of the protective order -- and if
18   you're relying on a different portion, Miss Rosenberg,
19   then now's your time to tell me -- but as I look at the
20   protective order, I think we're talking about
21   paragraph 15.
22             MS. ROSENBERG:  That's the primary one, Your
23   Honor.  There are others that refer to the duties of
24   keeping information protected and so are sort of
```

Keefe Reporting Company

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1   ancillary, but, yes, 15 is what's key here.
 2              THE COURT:  Okay.  And for the record, I'm
 3   going to read 15.  It says, "No documents, information or
 4   things designated as confidential or attorneys' eyes only
 5   shall be filed with the Court, including that contained
 6   in pleadings, motions, briefs, declarations or exhibits,
 7   except under seal.  To the extent practical, only those
 8   portions of a filing with the Court that contain material
 9   designated as confidential shall be filed under seal, but
10   only after receiving leave of Court.  The Court and its
11   staff shall maintain under seal all filings so designated
12   pending further order or direction from the Court," and
13   here's a key sentence.  "Provided that no confidential
14   information is disclosed, the parties may generally refer
15   to documents designated as confidential in pleadings,
16   motions, briefs, affidavits or exhibits filed with the
17   Court without the need to file such pleadings, motions,
18   briefs, affidavits or exhibits under seal."
19              All right.  That's generally the portion of the
20   protective order that the Court looked at, all right?
21   And so I guess now, Miss Rosenberg, tell me -- and I'm on
22   page -- I'm -- the first highlighted portion of what you
23   wanted the Court to look at is on page 9 of 23 on
24   Doc 173, and it says, "Statement of issues to be
```

Keefe Reporting Company

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

1    decided."  You didn't forget your glasses, did you,

2    Mr. Wigginton?

3               MR. WIGGINTON:  No.  I got a hole in my

4    pocket, Judge.  My pen dropped in my pocket.

5               THE COURT:  We'll get you a pen.  That's not

6    a problem.  Get Mr. Wigginton a pen.

7               MR. WIGGINTON:  Look, here's -- Judge,

8    here's my pen.

9               THE COURT:  I got you.  I've been there.

10              MR. WIGGINTON:  Sorry.  I'm not a rich guy.

11              THE COURT:  I understand.  All right.  And

12   under 1, the portion that was highlighted, it says, "Were

13   the documents in Cisco's possession regarding Cisco's

14   years-long cybersecurity testing and research for

15   Chrysler," and then what's highlighted is, "on the same

16   concerns and vulnerabilities that are essentially at

17   issue in the underlying action," and that's highlighted,

18   and at the bottom of the page it says, "In 2013" -- this

19   portion's not highlighted -- I'll get to the highlighted

20   portion -- "In 2013, Chrysler hired Cisco to perform

21   in-depth cybersecurity research and testing."  Okay.  And

22   then the portion that's highlighted says, "On exactly the

23   set of defects that are alleged in the underlying action.

24   Cisco's multiyear investigation and analysis culminated

Keefe Reporting Company

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1   in a series of reports outlining serious vulnerabilities
 2   in the affected vehicles which Cisco reports characterize
 3   as high severity which may allow an attacker to gain full
 4   control over the target device," and there's a footnote
 5   on the underlying action that's also highlighted, and it
 6   says, "A Cisco report of its penetration test finding
 7   states that the goal of Cisco's evaluation was to,"
 8   quote, open quotes, "identify security flaws and
 9   vulnerabilities in the infotainment system," infotainment
10   system being in brackets, comma, "specifically
11   concentrating on remote exploit via the cellular modem.
12   The analysis is performed from the perspective of a
13   potential attacker approaching the system," and then
14   there's an ellipse, so there's material missing from the
15   quote, but the quote picks up, "in order to gain control
16   of the infotainment system," again in brackets, "and
17   safety, dash, critical functions of the vehicle," period,
18   closed quotes.  Okay.  Tell me -- Miss Rosenberg, tell me
19   about that.
20                MS. ROSENBERG:  Okay.  First of all, Your
21   Honor, the -- you pointed this out.  Plaintiffs raised
22   the issue of whether this information is really
23   confidential and available in public record.  As a
24   factual matter, it's not.  You could easily compare that
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

1   to the -- What they attached as being the public record

2   is an attachment to Mr. Pendry's declaration,

3   docket 1771, and it was very high-level general

4   information, didn't include time period, didn't include

5   the name of the provider, didn't include quoted language,

6   didn't include any of that.

7            THE COURT:  Well, let me ask you a question,

8   okay, and I'll -- because we've gone straight to what's

9   available in the public record.  So is it your position

10  that it was not available in the public record that

11  Chrysler was conducting penetration testing?

12           MS. ROSENBERG:  What you just said, Chrysler

13  was conducting penetration testing --

14           THE COURT:  Or has conducted or did conduct.

15           MS. ROSENBERG:  -- that was the full extent

16  of what was available in the supplement.

17           THE COURT:  So the answer is yes.

18           MS. ROSENBERG:  The answer is yes to that.

19           THE COURT:  Okay.  Hold on.  I have another

20  question.

21           MS. ROSENBERG:  Yes, Your Honor.

22           THE COURT:  Was it available in the public

23  record that Cisco was conducting the testing?

24           MS. ROSENBERG:  No.

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
1                    THE COURT:  Okay.  Was it available in the

2    public record that the testing resulted in certain

3    vulnerabilities being discovered?

4                    MS. ROSENBERG:  Certain, but not all of the

5    ones referenced -- not all of the defects at issue in

6    this case.

7                    THE COURT:  Okay.  But that some were

8    discovered but not all.

9                    MS. ROSENBERG:  Correct.

10                   THE COURT:  All right.  Now, let's go back

11   to Cisco.

12                   MS. ROSENBERG:  Okay.

13                   THE COURT:  You're saying that it was not

14   available that Cisco was the one doing this testing.

15   Okay.  How many -- and I don't expect -- you don't have

16   to give me a number, exact number, but are there multiple

17   vendors or folks who are capable of doing this kind of

18   testing or is Cisco the only one?

19                   MS. ROSENBERG:  No.  Your Honor, there are

20   multiple entities capable of doing such testing, and also

21   point out -- I want to answer all Your Honor's questions

22   about what was publicly available.  It is of course FCA

23   US's position, supported by clear Seventh Circuit law,

24   that it doesn't even matter for purposes of a violation
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1   of a protective order whether the information was in the
 2   public record.
 3              THE COURT:  So it's your position that a
 4   per se violation is sanctionable even if there's no harm
 5   done.
 6              MS. ROSENBERG:  Our position is that a
 7   per se violation is sanctionable if the Court decides
 8   within its inherent authority.  It is for the Court to
 9   consider is a sanction appropriate given the
10   circumstances, and one issue for that is in fact
11   prejudice, although the cases we cited talk about
12   prejudice being more than just the disclosure of
13   confidential information.  It's an erosion of confidence
14   in the process.  So that's one.  Two, prejudice is not
15   the only things courts look at for sanction.  They
16   emphasize deterrents of the parties at issue and others,
17   and here that's particularly important as we now have
18   three violations of the protective order by Plaintiffs;
19   the original -- the second one, what was filed in
20   California, being what prompted this motion, there was a
21   previous one about non-destruction of claw back
22   documents, and now in Plaintiffs' opposition there's a
23   third violation where they disclosed a deposition
24   transcript, the time for which had not expired to
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
1    designate confidential.  So to focus just on prejudice,
2    again, the Seventh Circuit authority is clear that's not
3    the analysis.
4              THE COURT:  All right.  So tell me
5    specifically what you're pointing to in the portions that
6    I read that do indicate some prejudice or, as you say,
7    the possibility of erosion of confidence in the process.
8              MS. ROSENBERG:  Well, documents were
9    produced on the understanding that Plaintiffs would
10   follow violation, and if Plaintiffs --
11             THE COURT:  That Plaintiffs would do what?
12             MS. ROSENBERG:  The Plaintiffs would abide
13   by their obligations under the protective order, and that
14   meant if there were information in documents marked
15   confidential that they believed was non-confidential, the
16   recourse under the protective order would be to come to
17   FCA US, and if there was still disagreement whether the
18   information was really confidential, to come to the
19   Court, and we cite cases in our reply, doing otherwise
20   courts refer to as, you know, short-circuiting the
21   process and self-help remedies that are completely
22   inappropriate and are sanctionable, so the prejudice here
23   is -- and this is why we think the punishment we ask for
24   really fits the crime -- is Plaintiffs have no regard for
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

1   that process.  You know, again, they're making arguments

2   about whether this information is really confidential.

3   They're entitled to make those arguments, but they're

4   only entitled to do it in accordance with how the

5   protective order sets out that they do it, and so here,

6   this information, again, is non-public, it gets into much

7   more that is publicly available, but that isn't even --

8   in the Seventh Circuit's words, is not relevant to the

9   violation.

10            THE COURT:  All right.  Let me stop you

11  there for a second.  Mr. -- What I'm looking at -- and

12  this, Mr. Wigginton, is for you -- I'm troubled by this

13  footnote here and I need you to explain it to me.  Says,

14  "The Cisco report of its penetration test finding states

15

16

17  of the report, that quote?

18            MR. WIGGINTON:  No, Your Honor.  The -- As

19  we indicated to the Court, if you do a Google search and

20  you put in FCA penetration testing, within 0.2 seconds

21  you'll bring up about 1500 documents, and the first one

22  you're going to bring up is a document from Chrysler

23  itself, where -- remember, Judge, this case began after a

24  Wired magazine article in July of 2015.  Chrysler puts

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
1   out a bulletin to its own consumers saying that in

2   January of 2014 we did --

3              THE COURT:  Hold on.  You're getting further

4   along than I'm ready to go to.

5              MR. WIGGINTON:  Okay.

6              THE COURT:  My question was --

7              MR. WIGGINTON:  No, we -- our position is,

8   Judge -- and I'm very pleased that you focused right in

9   on the real issue in this case -- is what was in that

10  motion that we filed in the Northern District of

11  California that may have been confidential.  We disagree

12  that it was.

13             THE COURT:  Well, hold on.  But you're

14  getting ahead of me, and I'm going to let you make that

15  record fully, but what I want to know is, is this

16

17

18  something that was produced to you that was designated as

19  confidential?  That's what I'm trying to find out.

20             MR. WIGGINTON:  Not to my knowledge, no.

21             THE COURT:  Not to your knowledge.  Okay.

22  Miss -- Hold on, Miss Rosenberg.  I see you.

23             MR. WIGGINTON:  We believe that that

24  information was in the public domain.
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1              THE COURT:  I got you.  I got that.  That's
 2  a different question.
 3              MR. WIGGINTON:  Okay.
 4              THE COURT:  The question is, was it in a
 5  report, and if the answer is yes, then you can tell me,
 6  "But it was also in the public domain," but my question
 7  is, is that quote -- and it's in quotes -- is that
 8  something that was in a report that was produced to the
 9  Plaintiff that was marked confidential?  And
10  Miss Rosenberg can't wait to tell me it is, it was, all
11  right?  She's busting at the seams.  All right.  Go
12  ahead, Miss Rosenberg.  Tell me where it was.
13              MS. ROSENBERG:  I'm happy to hand you the
14  documents, Your Honor.
15              THE COURT:  Yeah.  Okay.  And I should
16  point -- I should look where?
17              MS. ROSENBERG:  Right there.
18              THE COURT:  Oh, you've got it on the tab?
19              MS. ROSENBERG:  Yes.
20              THE COURT:  All right.  She's tabbed this as
21  Chrysler penetration testing, HUBP4 penetration test
22  findings, control printing, do not duplicate, master
23  copy, do not distribute.  It says at the bottom,
24  confidential, members of controlled distribution list,
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

8    So this is a direct quote from this document.  Okay.

9    Now, you're telling me, Mr. Wigginton, that this quote

10   was available somewhere else.

11              MR. WIGGINTON:  Can I -- I'm sorry, Judge.

12              THE COURT:  Oh, you don't have it?  Here.

13   No, pass this over.

14              MR. WIGGINTON:  This is --

15              MS. ROSENBERG:  Right, right.  I need a copy

16   too.  I believe this is another copy.

17              MR. WIGGINTON:  Oh, thank you.

18              THE COURT:  You need to see the report I

19   read from, Mr. Wigginton?

20              MR. WIGGINTON:  No, I have it.

21              THE COURT:  All right.

22              MR. WIGGINTON:  I -- She just handed it to

23   me.  Thank you, Judge.  Your Honor, our position is is

24   that everybody in the industry, particularly in the

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1   technology industry, understands what penetration testing
 2   is, and the goal of any penetration testing is to
 3   identify -- is to attack a system and identify flaws in
 4   the system or vulnerabilities in the system, and that --
 5   when you use the word penetration testing, that is
 6   exactly what everybody in the public domain understands
 7   is the purpose of the penetration testing.
 8              THE COURT:  Yeah, I get that, but that's not
 9   Miss Rosenberg's point.  Miss Rosenberg's point is she --
10   that her client produced things to the Plaintiff that
11   were marked confidential.  There was a process in place,
12   and her point is you violated the process and, Judge,
13   rain down on them, okay?  And, I mean, it's kind of clear
14   that this one quote that I'm talking about -- and we're
15   not talking about prejudice or where it was available,
16   and maybe there's some mitigating circumstances and you
17   got it somewhere else and all of that, but the first --
18   the initial thing I want to say is this quote came
19   directly out of an FCA document, and what's on the
20   document -- and this I would assume was when it was
21   produced in the company, it was confidential.
22              MS. ROSENBERG:  Correct.  Actually, it was
23   quite confidential within the company.
24              THE COURT:  Right.
```

Keefe Reporting Company

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
1              MS. ROSENBERG:  It wasn't circulated, and,
2    yes, and then under the protective order it was
3    designated --
4              THE COURT:  Right, right.  So -- And then it
5    was designated as confidential when it was produced.  So,
6    I mean, clearly -- whether or not you got it from
7    somewhere else -- and those are mitigating
8    circumstances -- clearly it came out of a confidential
9    document, so that's kind of clear at least on that one,
10   and I was looking at that.  I want to look at a couple
11   more.  The other thing that you highlighted -- The next
12   thing that was highlighted by Miss Rosenberg, it's -- and
13   I'm on page 11 of 22 or in -- on the document 11 of 22 in
14   the court filing 12 of 23 at the docket heading at the
15   bottom, and this is where we get to -- when -- this is
16   your point about Cisco, I would assume.  "During the
17   course of discovery and the underlying action, movants
18
19
20
21
22   comma, to conduct cybersecurity testing on the Harman
23   infotainment systems and the term electronics, open
24   quotes, architecture, closed quotes, of the affected
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1   vehicles, period.  Beginning sometime in and around 2013

 2   and continuing for several years, comma, Cisco conducted

 3   both penetration" -- and penetration in quotes -- "and

 4   regression" -- regression in quotes -- "testing on the

 5   infotainment system of the affected vehicles," and as a

 6   footnote, 5, and 5 talks about -- footnote 5 is the

 7   definition of penetration and regression testing.  Now,

 8   it's not your position that penetration and regression

 9   testing is confidential.

10            MS. ROSENBERG:  No, it's not.  Only -- Just

11   the position that the footnote would reveal what they

12   were already saying in that context.

13            THE COURT:  I got you.  I got you.  Okay.

14   So, now, I'm struggling with this one, because as you do

15   discovery, I mean, it's going to -- where's -- where does

16   this come from as far as a violation of the protective

17   order?

18            MS. ROSENBERG:  Well, two points on that

19   one.

20            THE COURT:  Pull that down.  I keep seeing

21   you up on your tippy-toes.

22            MS. ROSENBERG:  I'll respond to that two

23   ways, Your Honor.  First of all, there's an admission

24   right in the highlighted text that they learned the
```

Keefe Reporting Company

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1    information only through discovery, not through the

 2    public domain, during the course of discovery, so that's

 3    one.

 4                 THE COURT:  Well, hold up.  Everything you

 5    discover in discovery is not a violation of a protective

 6    order.

 7                 MS. ROSENBERG:  Granted, Your Honor.  It's

 8    just the idea that they were learning it from the public

 9    domain.  I think had you seen that information, they

10    would have attached it to their opposition.  Again, if

11    you look at the information that was publicly available

12    attached to the opposition, it didn't include that it was

13    multiple third parties.  It didn't include Cisco.  It

14    didn't include regression testing, which is different

15    than penetration testing.  It didn't include testing on

16    architecture, so --

17                 THE COURT:  Yeah, but what I'm saying is,

18    where is that information?  Where'd they get it from?

19                 MS. ROSENBERG:  It's the same document, and

20    I'm happy to handle it, Your Honor.  It's more -- It's a

21    lot more to look at because it's not a direct quote, but

22    the only place -- it's not in the public domain.  The

23    only place that information would appear that has to be

24    the source are multiple Cisco reports produced and
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
1    designated confidential.
2                  THE COURT:  Mr. Wigginton, go ahead.
3                  MR. WIGGINTON:  Your Honor, I completely
4    disagree.  I mean, the Court -- and Judge Posner told us
5    at the Seventh Circuit conference, if you recall, several
6    years ago that it was appropriate for the Court to go
7    outside and do its own research, much to the boos of the
8    crowd.  We constantly, constantly -- I do it on my own
9    volition at home, do it at work -- research FCA and
10   Chrysler and penetration -- I mean, penetration testing,
11   regression testing, every good manufacturer will be doing
12   this.  Anybody who uses any type of wired connect system
13   would be doing this.  They would be expected to do it.
14   If they didn't do it, then plaintiffs' lawyers would be
15   calling them negligent.  So this whole information about
16   this and the fact that Cisco does this work for -- that's
17   well known.  Everybody knows Cisco.  Cisco, they're the
18   best.  They do it for everybody.
19                  MS. ROSENBERG:  They don't even do it
20   anymore, Your Honor.  They did it only for a brief period
21   of time, so that --
22                  MR. WIGGINTON:  Well, they bought a division
23   called NDS.  They bought a company that did it, not Cisco
24   itself.
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1                    THE COURT:  All right.  I want to look a
 2      little further.  The next place is on page 16 of 23 in
 3      the court document, 15 of 22 on the actual document, and
 4      the highlighted portion for the Court is in the first
 5
 6
 7
 8
 9
10      that's highlighted in that same paragraph near the end.
11      It says, "Cisco's" -- The sentence starts, "Cisco's
12      internal communications likely cover issues that were not
13      included in the reports," comma -- and then this is the
14      highlighted portion -- "including Cisco's internal and
15      undoubtedly more candid assessment of the flaws in
16      Chrysler's vehicles."  Well, now, that last portion,
17      Miss Rosenberg, seems to me just speculative, if nothing
18      more.
19                    MS. ROSENBERG:  I agree, Your Honor, but to
20      the extent it was referring to Cisco assessing flaws and
21      thus revealing, you know, what was in the other contents,
22      and I think we were particularly vigilant in the
23      highlighting because of the obvious violation of the
24      protective order.  Had that been all that was there, you
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1   wouldn't have seen a motion.

 2              THE COURT:  Your antenna was up is what

 3   you're --

 4              MS. ROSENBERG:  Exactly.

 5              MR. WIGGINTON:  Your Honor, that's nothing

 6   more than just efficacy by a lawyer.

 7              THE COURT:  I understand your argument.

 8   Okay.  Now, here's -- But, now, the first portion I read

 9

10

11

12

13

14              MR. WIGGINTON:  Advocacy.

15              THE COURT:  Okay.

16              MR. WIGGINTON:  We speculated that Chrysler

17   engaged them.  We know from Chrysler's own public records

18   that you can find on the internet that they engaged --

19   they didn't say Cisco.  They said, "We engaged a third

20   party to conduct penetration testing," and they said that

21   in 2014.  Now we're here in 2017, so when we write this

22   or when our local counsel out in California wrote this,

23   you know, we just advocated the fact that, okay, we know

24   from Chrysler's own publicly domain documents that they
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1   engaged a third party in penetration testing in January

 2   of 2014, so now when we file this in 2017, we presume as

 3   advocates that they've been there for years.

 4              THE COURT:  All right.  Let's go on to

 5   page 18 of 23 in the court file and 17 of 22 on the

 6   actual document, and the first full paragraph in the

 7   middle of the page, what's highlighted for the Court is

 8

 9

10

11

12

13              MR. WIGGINTON:  We know that from Chrysler's

14   own documents that are in the public domain.  We also

15   know that from conversations.  We actually had good

16   workable relationship with Cisco's lawyers out in

17   California until FCA got involved.

18              MS. ROSENBERG:  That -- I'm sorry, Your

19   Honor.  I have to respond to that.  That is an

20   unsubstantiated accusation and it is entirely false.  We

21   didn't know about a dispute with Cisco until the motion

22   revealing our confidential information was filed.

23              MR. WIGGINTON:  How can you say that it's

24   false when you don't even know how --
```

Page 26

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1                    THE COURT:  Wait, wait, wait.  Hold on.
 2    Hold on.  Hold on.  Mr. Wigginton --
 3                    MR. WIGGINTON:  How can she say that's
 4    false?
 5                    THE COURT:  Mr. Wigginton, hold on.  Hold
 6    on.
 7                    MR. WIGGINTON:  You don't even know what
 8    you're saying.
 9                    THE COURT:  Mr. Wigginton.  Mr. Wigginton.
10    All right.  Mr. Wigginton, take it down a notch, okay?
11    All right.  I'm going to let you speak.  Go ahead,
12    Miss Rosenberg.  Go ahead.
13                    MS. ROSENBERG:  Well, if you're asking for a
14    response to that, it's the same.  That information is, A,
15    not in the public record, and B, I'd like to bring it
16    back that it would still be irrelevant to a violation of
17    a --
18                    THE COURT:  All right.  Mr. Wigginton, go
19    ahead.
20                    MR. WIGGINTON:  Your Honor, I think you hit
21    the nail on the head at the very -- your first comments
22    when you focused the issue.  I mean, our position is --
23    let's focus -- the reason we're here today is this
24    document, this motion that was filed in the Northern
```

Page  27

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

1    District.  That's the only reason we're here today.  This

2    is a contrived, phony emergent motion.  We know it's not

3    emergent anymore.  We know that Miss Rosenberg and her

4    firm passed on the opportunity to address this at 9 a.m.

5    last Friday when you gave them the opportunity, so we

6    know it's not emergent.  We know you took action.  We

7    took action out of an abundance of caution and great cost

8    to my firm to protect the record.  But if you go back to

9    the initial motion, Judge, there's nothing in here that

10   would constitute confidential information that would

11   prejudice FCA.

12             THE COURT:  All right.  I get that.

13             MR. WIGGINTON:  I mean, let's go to the

14   basics -- the basic -- there's nothing that's

15   confidential that would prejudice them under Seventh

16   Circuit law, under Judge Reagan's memorandums and orders

17   and under your memorandums and orders which we've pulled

18   up and filed.

19             THE COURT:  Let me -- Let's go to what was

20   filed last night.

21             MS. ROSENBERG:  Your Honor, I'm sorry, if I

22   may real quickly, you actually did skip over Exhibit B,

23   the second instance of them actually quoting the

24   document.  It's on page 9 of the actual filed document at

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1   the top.

 2                THE COURT:  I missed it?

 3

 4

 5

 6                THE COURT:  Okay.  Page 9.  All right.

 7   Page 9.

 8                MS. ROSENBERG:  It's page 9 of the

 9   California filing.  I'm not sure in Exhibit B.

10                THE COURT:  Okay.  Page 9 of 22.  Okay.

11                MS. ROSENBERG:  Yes.

12                THE COURT:  All right.  That was the first

13   one I did.  I thought I -- I didn't finish it is what

14   you're saying?

15                MS. ROSENBERG:  Right.  We talked about the

16   footnote that quoted -- this is the second answer, so

17   quoted directly from the document.

18

19

20

21

22

23

24   see -- The quotes you're saying, those quotes were pulled
```

Keefe Reporting Company

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1    directly from the same document?

 2              MS. ROSENBERG:  Yes, the second document I

 3    handed you, yes.

 4              THE COURT:  All right.  Very good.  All

 5    right.  Now, let's take up the -- I mean, that won't

 6    change the analysis of where we are at this point.  I

 7    mean, it's kind of clear that they did pull out of that

 8    report.  I get that.  All right.  If not -- I'm sorry.  I

 9    shouldn't say that.  It's clear that the language they

10    used was also contained in the report.  That's more clear

11    than ascribing that that's where they got it from,

12    because Mr. Wigginton is telling me that it's available

13    in other places.  All right.  Now, let's take up --

14              MS. ROSENBERG:  Your Honor, I would like to

15    ask, if Mr. Wigginton is relying on the fact that this

16    information's in the public record, we would want to see

17    that in evidence to rebut.  The only source -- We are

18    quite confident -- Again, as I said, these were kept

19    internally confidential.  We are quite confident that

20    these reports and the language from them along with other

21    information are not in the public domain, so if

22    Mr. Wigginton's relying on something, I would ask that he

23    share that with us and with the Court.

24              MR. WIGGINTON:  I would respond to that,
```

Keefe Reporting Company

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

1    Judge, the Court on its own volition can google FCA and

2    penetration testing and regression testing and you can

3    pull up.  I don't want to burden the Court with thousands

4    of pages of documents.

5              THE COURT:  I got it.  All right.  Let's

6    take up the supplemental that FCA filed, and that is --

7    basically, what they said, Mr. Wigginton, is your

8    response, you relied on the deposition of -- who was this

9    deposition of?  What was her name?

10             MS. ROSENBERG:  It's a he.  His name is

11   Laith Shina, is how you pronounce it.

12             THE COURT:  Lee Shina?

13             MS. ROSENBERG:  Laith Shina.

14             THE COURT:  Laith Shina.  Okay.  Why don't

15   you spell that for the court reporter.

16             MS. ROSENBERG:  Laith is L-A-I-T-H.  Shina

17   is S-H-I-N-A.

18             THE COURT:  All right.  And basically --

19   okay.  Basically, the argument or the position of FCA is

20   that -- yeah, that's right.  I got it here.  Laith Shina.

21   You spelled it correctly.  The argument is that in

22   response, Mr. Wigginton --

23             MR. WIGGINTON:  Yes, Your Honor.

24             THE COURT:  -- you relied upon the

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
1    deposition of Mr. Shina and the time for FCA to designate

2    portions or object to portions of his deposition as

3    confidential had not passed, so basically, you were

4    not -- according to the protective order, you were not

5    able to use his deposition in response and you used it

6    anyway.  Is that fair?

7              MR. WIGGINTON:  That's their allegation.

8              THE COURT:  No, no, I'm asking,

9    Miss Rosenberg, is that a fair recitation of what you

10   ordered?

11             MS. ROSENBERG:  Yes, Your Honor.

12             THE COURT:  All right.  Go ahead,

13   Mr. Wigginton.

14             MR. WIGGINTON:  Your Honor, the way I

15   understand it -- I'm -- and I apologize, Your Honor.  I'm

16   reading e-mails from -- I was out of town last night, and

17   I'm reading e-mails from one of my partners on this

18   issue.  Apparently he got it last night at seven, and --

19             THE COURT:  Well, is he in California time?

20             MR. WIGGINTON:  No, he's in St. Louis.

21             THE COURT:  All right.

22             MR. WIGGINTON:  But the process has always

23   been you either tell us before the deposition it's going

24   to be confidential or during the course of the deposition
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1   you tell us this is confidential or this is not

 2   confidential or this portion's confidential, this is not.

 3   They've done it in every deposition except for Shina.

 4   For Shina they absolutely did not provide any sort of

 5   notice on the record, as they are required by the

 6   protective order.  We checked the Shina deposition

 7   multiple times last night to make sure they didn't

 8   designate it or anything as confidential.  We confirmed

 9   that they did not.  So we don't have -- Judge, the way

10   the protective order -- and you read it at the start of

11   this hearing today -- they have to tell us during the

12   deposition.  We don't have to wait 20 days afterwards.

13              THE COURT:  Okay.  Well, that's --

14   that'll -- Miss Rosenberg, you want to respond to that?

15              MS. ROSENBERG:  Well, we cite the language

16   of the protective order, Your Honor, in our reply that in

17   fact says that's not the process that the confidentiality

18   designation has to be made on the record.

19              MR. WIGGINTON:  That is the practice that

20   we've been using in this case.

21              THE COURT:  Hold on.  Hold on.  I heard.  I

22   was getting ready to ask a question, but you got to take

23   it down a notch.  Okay.  What Mr. Wigginton through his

24   partner -- and that partner was who, Mr. Wigginton?
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1              MR. WIGGINTON:  Chris Baucom.

 2              THE COURT:  Oh, Mr. Baucom.  Okay.  What

 3   Mr. Wigginton has said is that while the protective

 4   orders may say that -- and I don't know, I'm going to

 5   double-check the protective order for the language -- the

 6   custom of the case was that in every other deposition --

 7   and how many depositions are we talking about,

 8   Mr. Wigginton?

 9              MR. WIGGINTON:  Chris Baucom says -- and

10   this is the only one -- however, I know we checked the

11   Shina multiple times -- they absolutely did not.  So two

12   out of the last three depositions that occurred where FCA

13   provided notice on the record during the deposition per

14   the order.  FCA knows the procedure.

15              THE COURT:  Oh, okay.  What he's saying is

16   that during every other deposition, and he said at least

17   two of the last three, when you wanted something to be --

18   you put them on notice that you were going to have

19   something marked as confidential.

20              MS. ROSENBERG:  So, Your Honor, there have

21   only been three depositions of FCA US witnesses.  The

22   first one Mr. D'Aunoy defended and put that on the

23   record.  The second one I defended, was Mr. Shina's.  I

24   was relying on my 20 days as in the language in the order
```

Keefe Reporting Company

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1   by notifying all parties in writing of the specific items

 2   so designated within 20 days of receiving a copy of the

 3   deposition transcript.  The third -- That would be my

 4   custom or at least so you're not designating everything

 5   confidential so you can review a transcript.  The third I

 6   defended just took place Wednesday of this week, and the

 7   only reason I deviated from what's permitted in the

 8   protective order and what would be my normal practice is

 9   because they had at that point violated the protective

10   order two times and I was -- again, as you put it, my

11   antenna was up.

12               MR. WIGGINTON:  So are you telling me,

13   Miss Rosenberg, then you set us up, you laid a trap,

14   that's why you didn't designate it confidential, is

15   because you know you were going to file -- you had this

16   emergency motion pending and then you knew we couldn't

17   use Shina's deposition?  That's exactly what you did.

18   This is right out of the St. Clair County plaintiffs'

19   playbook.

20               THE COURT:  Time out.  Time out.  Time out.

21   Time out.  Okay.  Time out.  Time out.  Time out.  All

22   right.  If you're going to address an issue,

23   Mr. Wigginton, you must address the Court.  If you all

24   could talk to each other, I wouldn't be sitting here.  Do
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1   not address Miss Rosenberg again.  All right.

 2   Miss Rosenberg, you want to respond?

 3              MS. ROSENBERG:  I absolutely do, Your Honor.

 4   That's outrageous.  What I did at the Laith Shina

 5   deposition was follow the terms of the protective order.

 6   Nothing had been filed with Cisco.  There was no issue to

 7   set up.  At that point they had in fact violated the

 8   protective order with respect to the claw back provision.

 9   There was no issue at that point with the disclosure of

10   confidential information, so, A, it wasn't a setup, and

11   B, what I stated was that's my normal practice in

12   accordance with the procedure in the protective order.

13              THE COURT:  All right.  Thank you very much.

14   I got it.  Okay.  Now, lastly, Miss Rosenberg, you know,

15   we all agree that right now the matter in California is

16   sealed so there's no emergency or emergent issue going

17   on.  Some of the things you asked for in your motion

18   relied on at that time you didn't know that was going to

19   be sealed, you -- so tell me what you actually want,

20   okay?  I -- So I don't want to go through all -- some of

21   your sanctions you ask for are not -- no -- are moot at

22   this point.

23              MS. ROSENBERG:  Correct, Your Honor, to the

24   extent that we were asking for immediate corrective
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

1    action for the information in California, although I will

2    say that's now replaced by asking for immediate

3    corrective action with respect to Mr. Shina's deposition,

4    which is now in the public record, so that's one.

5              THE COURT:  Okay.

6              MS. ROSENBERG:  The second would be our fees

7    and costs, FCA US's fees and costs associated with

8    bringing the matter to the attention of the California

9    court and to this court, which -- and we cited upon this

10   case law in our brief -- is routine for courts where

11   parties violate the protective order in this manner.

12   They say, you know, the other party, the producing party,

13   has to bring the -- to the Court's attention the

14   violations and that is part of the prejudice, and so fees

15   are routine.  And the third sanction we're asking for,

16   Your Honor -- and I think this is logical and fair and

17   I'll explain to you why -- is that discovery cease with

18   respect to the production of additional documents.  Now,

19   there are still depositions set to go forward, there are

20   many thousands of documents that have been produced in

21   this case, there's, you know, ample evidence, but we

22   think that is, A, logical because Plaintiffs have shown

23   at best, putting it kindly, an indifference, a casualness

24   towards the terms of the protective order and actually

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1   protecting confidential information produced.  There's a

 2   pattern at this point.  And second, we think it's fair

 3   because it's logically connected to what they've done

 4   here, which is disclose confidential information and

 5   documents, with discovery set to close in less than six

 6   weeks.  June 16th is the cutoff.  And so we believe

 7   that's an appropriate sanction.

 8               THE COURT:  Okay.  Now, Mr. Wigginton,

 9   understand before you respond, number one, I have not

10   decided if I'm going to levy any sanctions, so I don't

11   know that -- number one, the first thing is will there be

12   sanctions, and number two, if there are sanctions, what

13   there'll be.  So I don't know how you want to respond, if

14   at all, to that.

15               MR. WIGGINTON:  Well, Judge, I appreciate

16   your time this morning.  First of all, it's our position

17   there was never a violation of the protective order.

18   That motion that was filed in California is pretty

19   innocuous.  This -- As I indicated, this play that

20   they're making from Thompson Coburn is right out of the

21   St. Clair County plaintiffs' bar.  You find one little

22   thing.  This is -- I know the guys that use this all the

23   time.  You find one little thing and you try to make a

24   mountain out of a molehill, and this is exactly what
```

Keefe Reporting Company

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1    they're doing, and you have seen it, I've seen it.  We
 2    know what's going on here.  This was a very innocuous
 3    motion that now has created tremendous cost and expense
 4    to my firm in responding and tremendous cost in getting
 5    local counsel back engaged, and we're here today all for
 6    that.  But there was not -- I want to be -- I want the
 7    record to be perfectly clear that our position is there
 8    was never a violation of the protective order.
 9            Second of all, it's crazy what they're asking
10    for.  I mean, they want to end written discovery
11    production of documents in a class action involving over
12    a million vehicles, a million consumers, now, because of
13    this?  I know this Court has seen much, much, much more
14    egregious conduct than this and would never entertain
15    these kind of -- and then last night in the middle -- you
16    know, at seven o'clock last night they drop on the Court
17    and on opposing parties a supplemental evidence in
18    support in violation of local rules.  They completely --
19    They constantly ignore the local rules in this case,
20    constantly, and then they ask for drastic -- I mean, do
21    you think the Seventh Circuit would ever support a remedy
22    that drastic?  Anyway, Judge, you know where I'm -- you
23    know where my position is.  Look, we took all the
24    necessary action.  The motion was under seal.  Nobody's
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1    been hurt.  Their competitors aren't looking at this case

 2    because Chrysler's so far behind the curve in technology

 3    that the competitors aren't going to copy anything

 4    Chrysler does.

 5              THE COURT:  Okay.  Thank you very much.

 6    Ms. Mazzocco -- did I say it right, Miss Mazzocco?

 7              MS. MAZZOCCO:  Yes.

 8              THE COURT:  We're concluding here.  Is there

 9    anything you want to put on the record?

10              MS. MAZZOCCO:  No, actually, I don't --

11    Harman doesn't have anything to add.

12              THE COURT:  All right.  Very good.  Hold on

13    a second.  Hold on, folks.

14              MS. ROSENBERG:  Your Honor, may I point out

15    one thing in response to what Mr. Wigginton said?

16              THE COURT:  Sure.

17              MS. ROSENBERG:  When he said that the

18    Seventh Circuit would never support such a drastic

19    sanction, in fact we cite two cases in our brief where

20    the Seventh Circuit actually affirmed quite a similar

21    sanction, just ending discovery early.  That's the Scott

22    case and the E through 60 cases.

23              THE COURT:  Okay.  We've got those in the

24    record and we'll take a look.
```

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1            MS. ROSENBERG:  Yeah, sure.
 2            THE COURT:  All right.  The -- Lastly,
 3   Mr. Wigginton, in fairness, trying to be fair here -- and
 4   I'm a big believer in due process -- you're correct there
 5   was a filing last night at seven o'clock.  It's ten
 6   o'clock now by the courtroom clock.  Of course that's,
 7   you know, a little more than 12 hours ago.  If you want
 8   to respond to that, I'm not telling you you will or have
 9   to, but I think due process requires that I give you an
10   opportunity to file something if you'd like, and I'll
11   give you till next Friday if you want to put something on
12   the record in response to that.
13            MR. WIGGINTON:  I appreciate that.
14            THE COURT:  All right.  So we'll take this
15   matter under advisement.  We'll get an order out.  I do
16   want to tell you guys you are with Judge Reagan, and
17   Judge Reagan is -- he does not move deadlines, so -- in
18   my experience, it's very difficult for him to move
19   deadlines to get a move down there, so we will not sit on
20   this.  We will -- We'll give you, Mr. Wigginton, till
21   next Friday to file something and we'll get you an order
22   out on this the week after that posthaste.
23            MS. ROSENBERG:  Your Honor, could we ask if
24   the Court would consider moving faster just on the Shina
```

Keefe Reporting Company

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1   deposition to the extent that that is part of public

 2   record?

 3              THE COURT:  Yeah, yeah, yeah, we'll take a

 4   look at that if we can.  At the very least we'll -- well,

 5   I'm thinking out loud and talking at the same time, which

 6   is always dangerous.  We'll take a look at it, and I know

 7   your issue and we'll see what I think is appropriate to

 8   do with that.

 9              MS. ROSENBERG:  Thank you, Your Honor.

10              THE COURT:  All right.  Very good.  Thank

11   you, Mr. Wigginton.  Thank you, Miss Rosenberg, Mr. --

12   help me pronounce your name.

13              MR. D'AUNOY:  D'Aunoy, Your Honor.

14              THE COURT:  Mr. D'Aunoy, and, Miss Mazzocco,

15   we are in recess.  Thank you very much, folks.

16              (Hearing concluded at 10:02 a.m.)

17

18

19

20

21

22

23

24
```

Keefe Reporting Company

Brian Flynn, et al v. FCA US LLC, et al.
Motion Hearing 5/5/2017

```
 1   STATE OF ILLINOIS      )
                            ) SS
 2   COUNTY OF BOND         )

 3

 4          I, KAREN WAUGH, a Notary Public and Certified

 5   Shorthand Reporter in and for the County of Bond, State

 6   of Illinois, DO HEREBY CERTIFY that I was present at

 7   Federal Courthouse, East St. Louis, Illinois, on May 5,

 8   2017, and did record the aforesaid Hearing; that same was

 9   taken down in shorthand by me and afterwards transcribed,

10   and that the above and foregoing is a true and correct

11   transcript of said Hearing.

12          IN WITNESS WHEREOF I have hereunto set my hand

13   and affixed my Notarial Seal this 22nd day of June, 2017.

14

15

16                          _____

17                              Notary Public--CSR

18                                #084-003688

19

20

21

22

23

24
```