IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BRIAN FLYNN,** | ) | |
| **GEORGE BROWN,** | ) | |
| **KELLY BROWN, and** | ) | |
| **MICHAEL KEITH,** | ) | |
| *on behalf of themselves and all others* | ) | |
| *similarly situated,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-0855-MJR-DGW** |
| | ) | |
| **FCA US LLC** *doing business as* | ) | |
| **CHRYSLER GROUP LLC, and** | ) | |
| **HARMAN INTERNATIONAL** | ) | |
| **INDUSTRIES, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND
PLAINTIFFS' MOTION TO CERTIFY CLASS

**REAGAN, Chief Judge:**

INTRODUCTION

In 2015, Plaintiffs Brian Flynn, Michael Keith, and George and Kelly Brown filed

this putative class action against Defendants FCA US LLC ("FCA") and Harman

International Industries, Inc. ("Harman") alleging a number of claims related to design

flaws in the Uconnect system, which was manufactured by Harman and installed in

certain 2013-2015 Chrysler vehicles.[1] According to Plaintiffs, the Uconnect is an infotainment system that allows integrated control over phone, navigation, and entertainment functions in certain vehicles, and its design and installation makes it vulnerable to hackers seeking to take remote control of one of the affected vehicles, as reported in a 2015 WIRED magazine article. Although the article contributed to a voluntary recall by Chrysler, Plaintiffs maintain that the affected vehicles still have a number of unremedied vulnerabilities and design defects that could allow hackers to access critical and non-critical systems in the vehicles.

Before the Court are Defendants' motions for summary judgment and Plaintiffs' motion to certify class. Plaintiffs moved to certify several classes, including nationwide and state-based classes. (Doc. 266). FCA and Harman both responded to the motion (Docs. 318, 321), and Plaintiffs replied to both responses (Docs. 338, 339). The Court held a hearing on the motion on January 11, 2018, after which Defendants renewed a standing challenge made in the early stages of this litigation and sought permission for an interlocutory appeal (Docs. 344, 345, 378). The Seventh Circuit denied the petition for leave to file an interlocutory appeal on May 4, 2018. (Doc. 388). Defendants petitioned for rehearing, and their request was denied on June 29, 2018.

Before briefing was complete on the motion to certify class, Defendants filed seven motions for summary judgment. FCA filed four motions (Docs. 256, 257, 264, and 267) along with briefs in support thereof, and Harman filed three (Docs. 346, 348, and

---

[1] FCA US LLC is an American subsidiary of Fiat Chrysler Automobiles, N.A. that sells vehicles under the Chrysler, Dodge, and Jeep brands at issue in this suit.

350).[2] Plaintiffs responded to all seven motions (Docs. 297, 298, 299, 305, 365, 366, 367), and Defendants filed replies to each response (Docs. 288, 289, 290, 291, 375, 376, 377). With the prolific briefing complete, the motions for summary judgment and the motion to certify class are ripe for ruling, and the Court considers each in turn.

<u>BACKGROUND</u>

Plaintiffs bring suit against Harman and FCA on a number of implied warranty and fraud claims alleging that two Uconnect infotainment systems, the 8.4A and 8.4AN, which were manufactured by Harman and incorporated into certain vehicles (the "class vehicles") by FCA, were installed in such a way that the systems are unreasonably and unsafely vulnerable to hacking by third-parties. In essence, this case contemplates (1) whether the class vehicles are defective; (2) whether Defendants knew they were defective and, if so, when; and (3) whether they withheld or concealed information about the alleged defects from consumers. All the vehicles purchased or leased by the named plaintiffs were equipped with either a Uconnect 8.4A or 8.4AN.

Brian Flynn is an Illinois consumer who purchased a new 2014 Jeep Grand Cherokee from Federico Chrysler Dodge Jeep RAM in Wood River, Illinois. He seeks to certify a nationwide or, in the alternative, an Illinois-based Magnuson-Moss Warranty Act class on the theory that the cybersecurity defects in the class vehicles run afoul of

---

[2] The Court has warned the parties in the past about tactics, such as the excessive use of footnotes, that attempt to skirt this Court's page limits. While not expressly forbidden by the rules, Defendants attempt an end-around briefing limits by filing multiple motions for summary judgment. That has not gone unnoticed and will not be looked upon kindly in the future. The Court may well impose a word-count limitation in the future – a first for the undersigned.

the implied warranty of merchantability. To that end, he also seeks to certify an Illinois class on a common law implied warranty of merchantability claim.

In addition, Flynn brings common law fraudulent concealment and fraudulent omission claims on behalf of a nationwide or an Illinois class of consumers, alleging that FCA and Harman concealed and suppressed information about the severity of the cybersecurity defects in the class vehicles. In doing so, Flynn contends that FCA and Harman also engaged in deceptive or unfair business practices in connection with the sale of his vehicle in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) when they concealed or omitted material facts about the cybersecurity of the class vehicles and made affirmative statements about the safety of the vehicles. Flynn also pursues an unjust enrichment claim on behalf of a nationwide or Illinois class against both FCA and Harman.

George and Kelly Brown are Missouri consumers who purchased, through a special pricing program, a 2014 Jeep Cherokee from Dave Sinclair Chrysler Jeep Dodge in Pacific, Missouri. The Browns were subject to arbitration on their warranty claims and opted not to pursue them. Instead, they join Flynn in bringing a fraudulent concealment and fraudulent omission claim and an unjust enrichment claim on behalf of a nationwide class. They also allege that FCA and Harman violated the Missouri Merchandising Practice Act, Missouri's unfair and deceptive practices act, and seek to bring an unjust enrichment claim on behalf of a Missouri class if a nationwide class is not certified.

Michael Keith is a Michigan consumer who leased a 2014 Dodge Ram 1500 and a 2014 Jeep Cherokee from Lakeshore Chrysler in Montague, Michigan. He also leased a 2015 Dodge Challenger from K&M Dodge in Grand Rapids, Michigan. He brings an MMWA implied warranty of merchantability claim on behalf of either a nationwide or a Michigan class against FCA and Harman. He joins Flynn and the Browns in the proposed nationwide class fraudulent concealment and fraudulent omission claim and the nationwide class unjust enrichment claim. Keith also alleges that Harman and FCA violated the Michigan Consumer Protection Act and were unjustly enriched by his leasing of defective vehicles.

Harman and FCA maintain that the class vehicles are safe and not defective. They maintain that the vehicles have never been hacked outside of a controlled environment and that hacking the class vehicles now, after a 2015 recall campaign, is a remote risk, too remote to support Plaintiffs' claims of any overpayment or diminution in value damages. As Defendants moved for summary judgment on the named plaintiffs' claims before a class was certified, the Court considers their motions before considering Plaintiffs' motion to certify class. *See Cowen v. Bank United of Texas, FSB,* **70 F.3d 937, 941-42 (7th Cir. 1995)(noting that "[c]lass actions are expensive to defend. One way to try to knock one off at low cost is to seek summary judgment before the suit is certified as a class action.")**.

### A. Legal Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe,* **743 F.3d 1101, 1105 (7th Cir. 2014),** *citing* **FED. R. CIV. P. 56(a).** *Accord Anderson v. Donahoe,* **699 F.3d 989, 994 (7th Cir. 2012).** A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986).** *Accord Bunn v. Khoury Enterpr., Inc.,* **753 F.3d 676, 681-82 (7th Cir. 2014).**

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe,* **699 F.3d 989, 994 (7th Cir. 2012);** *Delapaz v. Richardson,* **634 F.3d 895, 899 (7th Cir. 2011)**. As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.,* **756 F.3d 542 (7th Cir. 2014)**.

### B. FCA's Motion for Summary Judgment on All Claims (Doc. 256)

FCA's first motion for summary judgment raises two issues: first, that Plaintiffs have no evidence of a defect and, second, that they have no evidence of damages. As to whether Plaintiffs have evidence of a defect in the class vehicles, the Court finds that

there is a genuine issue of material fact. Plaintiffs present evidence of cybersecurity weaknesses, including various documents uncovered during discovery and the expert testimony of Marc Rogers. When considered in the light most favorable to Plaintiffs, this is sufficient to demonstrate a genuine dispute between the parties as to whether the class vehicles have defects. Similarly, the parties have a genuine dispute as to whether the alleged defects were remedied by FCA's voluntary recall or whether they require additional measures to protect the vehicles from an unreasonable risk of hacking.

As to evidence of damages, despite FCA's arguments to the contrary, the parties dispute whether the defects alleged by Plaintiffs have been repaired sufficiently. While FCA cites case law from district courts around the country that may suggest that overpayment damages are inappropriate where a defect has been fixed, here there is a dispute of material fact as to the effectiveness of Chrysler's software-related recall. Plaintiffs provide evidence that the design and installation of the Uconnect devices themselves, rather than the software operating the devices, is defective and that fixing the software may not have fixed the alleged defects. Accordingly, the Court finds that genuine disputes of material fact exist such that summary judgment cannot be granted as to all counts at this time.

C. **Motions for Summary Judgment on Magnuson-Moss Warranty Act and Common Law Implied Warranty Claims (Docs. 257, 264, 346, 350)**

Both FCA and Harman move for summary judgment on Flynn's and Keith's Magnuson-Moss Warranty Act (MMWA) claims, which they seek to bring against both Defendants on behalf of a nationwide class or, in the alternative, an Illinois and a

Michigan class, respectively. The MMWA claims are based on alleged violations of the implied warranty of merchantability. Additionally, Flynn brings an Illinois common law implied warranty of merchantability claim against FCA.

Neither Keith nor Flynn provided Defendants with pre-suit notice or an opportunity to cure prior to filing suit, and Defendants argue that they are entitled to summary judgment due to the lack of pre-suit notice. In ruling on Defendants' motions to dismiss, the Court found that the MMWA does not require pre-suit notice or an opportunity to cure in a putative class action prior to class certification, but FCA and Harman ask the undersigned to reconsider that ruling. Pursuant to 15 U.S.C. § 2310(e), putative MMWA class actions may proceed to the extent necessary to establish the representative capacity of the named plaintiffs prior to providing a defendant with notice and an opportunity to cure. *See In re Shop-Vac Mktg. and Sales Practices Litigation*, **964 F.Supp.2d 355, 362 (M.D. Pa. 2013)(MMWA "imposes different requirements on classes of consumers that it does on individuals . . . [and] classes of consumers are prohibited only from proceeding in a class action unless the seller is afforded a reasonable opportunity to cure.")**. The Court persists in its ruling that the MMWA claims may proceed for the limited purpose of establishing the representative capacities of Flynn and Keith despite the lack of pre-suit notice to Defendants. *Id.; See also Walsh v. Ford Motor Co.*, **807 F.2d 1000, 1004 (D.C. Cir. 1986)(class actions may not proceed, but may be brought, prior to affording a defendant an opportunity to cure).**

Flynn's common law implied warranty claim brought under Illinois law is not saved by the notice provision in the MMWA. The only way his common law claim can survive is if an exception to the notice requirement exists. As the Court already ruled, an exception to the notice requirement exists in Illinois if a defendant already knew of the defect in an entire product line. *See Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, **564 F.Supp.2d 833, 837 (N.D. Ill. 2008)**. Here, Flynn presents evidence that FCA was aware of the allegedly defective and risky installation of the Uconnect system at the time the class vehicles were sold, so there is sufficient evidence that the exception applies to survive a motion for summary judgment.

Defendants next argue that Flynn and Keith cannot pursue their MMWA claims and that the claims they seek to bring on behalf of a nationwide class must fail because their vehicles are merchantable. MMWA claims rise or fall based on the underlying state law. *See Walsh v. Ford Motor Co.*, **807 F.2d 1000, 1012 (7th Cir. 1986)**. Under Illinois law, a seller of goods impliedly warrants that the goods sold are "fit for the ordinary purposes for which such goods are used." **810 ILCS 5/2-314**. Similarly, Michigan requires that a product be "fit for its intended, anticipated or reasonably foreseeable use," to be merchantable. **Mich. Comp. Laws § 440.2314**. Both states allow plaintiffs to pursue claims that defective products are not merchantable.

Even though both Plaintiffs continued to drive their vehicles after learning of the hack detailed by WIRED, the Court cannot find as a matter of law that the vehicles were merchantable based on that evidence alone, as Defendants suggest. Plaintiffs provide evidence of cybersecurity defects sufficient to create a genuine issue of material fact as

to merchantability and the presence of defects in the vehicles. Despite Defendants' characterization that the defect alleged by Plaintiffs requires that they be hacked before bringing suit, Plaintiffs provide evidence that suggests that the Uconnect integration in their vehicles is flawed such that the defect exists regardless of whether they, personally, have had their vehicles hacked. The crux of their case is that their vehicles had unreasonable cybersecurity defects at the time they were produced and sold to the public, even when compared to other vehicles and products that include computer systems that are inherently hackable. The defect is in the design and the installation of the devices, according to Plaintiffs' evidence, and there is a genuine issue of material fact as to whether the vehicles were defective at the time they were sold and whether they were, and are, merchantable.

FCA also argues that summary judgment on Flynn's claims must be granted because he purchased from a dealership, rather than directly from FCA. Illinois law requires privity for an implied warranty claim and FCA maintains that there is no evidence of privity here. Privity inquiries into the relationship between a purchaser, a seller, and a manufacturer are fact-intensive. In some circumstances, a manufacturer is in privity with a consumer who purchased through a remote seller, but in others privity cannot be established between a consumer and a manufacturer. *See Szajna v. General Motors, Corp.*, 503 N.E.2d 760 (Ill. 1986)(examining whether a Magnuson-Moss written warranty permits a nonprivity consumer to sue under an implied warranty theory); *Elward v. Electrolux Home Products, Inc.*, 214 F.Supp.3d 701, 706 (N.D. Ill. 2016); *Azimi v. Ford Motor Co.*, 977 F.Supp. 847, 851 (N.D. Ill. 1996)(acknowledging

**that a car dealership may be an agent of the manufacturer)**. Based on the evidence presented, there is a genuine question of material fact as to whether privity exists, and summary judgment cannot be granted at this time.

Harman raises additional arguments as to the nationwide MMWA claim in Count One. The Court has previously dismissed all of the MMWA claims against Harman, but Plaintiffs attempt to bring Harman back into the MMWA action by including them in a proposed nationwide MMWA claim in Count One.[3] Despite the general reference to "Plaintiffs" in Count One, Flynn's MMWA claims against Harman were dismissed with prejudice for want of privity, and Flynn cannot attempt to revive the claim against Harman by alleging a nationwide class.

For all these reasons, the Court **DENIES** FCA's motions for summary judgment (Docs. 257, 264) as to Keith's and Flynn's state-based and nationwide MMWA claims (Counts 1, 4, and 11). FCA's motion for summary judgment on Flynn's common law implied warranty of merchantability claim (Count 5) is **DENIED**. Harman's motion for summary judgment on the claims of Brian Flynn (Doc. 346) is **GRANTED** as to the nationwide class claim (Count 1). Harman's motion for summary judgment (Doc. 350) on the MMWA claims of Michael Keith (Counts 1 and 11) is **DENIED**.

---

[3] The Browns decided against pursuing their MMWA claim and have been dismissed as plaintiffs as to Count One.

**D. Motions for Summary Judgment on Brian Flynn's Common Law Fraud and Illinois Consumer Fraud Act Claims (Docs. 257, 346)**

Flynn seeks to bring common law fraudulent concealment and fraudulent omission claims against FCA and Harman on behalf of a nationwide class (Count 2) or, in the alternative, an Illinois class (Count 7). He also alleges an Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) claim on behalf of an Illinois class.

The Court considers counts two and seven together, as the same law applies to both. [4] To succeed on these counts, Flynn must prove that FCA "intentionally omitted or concealed a material fact that it was under a duty to disclose" to him. *Wigod v. Wells Fargo Bank, N.A.*, **673 F.3d 547, 571 (7th Cir. 2012).** A duty to disclose arises if "'plaintiff and defendant are in a fiduciary or confidential relationship' or in a 'situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff.'" *Id.* **(citing** *Connick v. Suzuki Motor Co.*, **675 N.E.2d 584, 593 (1996).** A special trust relationship between a plaintiff and defendant is "extremely similar to that of a fiduciary relationship." *Id.* **(citing** *Benson v. Stafford*, **941 N.E.2d 386, 403 (2010))**. The concealment of a material fact must be more than a "mere passive omission of facts during a business transaction" and "must have been done 'with the intention to deceive under circumstances creating an

---

[4] Flynn brings Count Two under a vague reference to federal common law, alleging that no material conflicts exist between the states on such laws. Illinois choice of law rules require that Illinois law applies to Flynn's claims because he lives in Illinois, purchased his vehicle pursuant to a sales contract in Illinois, and was allegedly deceived in Illinois. Illinois law applies to Flynn's claims even as to a proposed nationwide class claim, so counts two and seven rise and fall together. Similarly, his unjust enrichment claims in counts three and eight rise and fall together.

opportunity and duty to speak.'" *Perlman v. Time, Inc.*, **380 N.E.2d 1040, 1044 (Ill.App. 1st 1978)(citation omitted)**.

The problem for Flynn is that he points to no evidence and makes no developed argument beyond mere conjecture that demonstrates that an automobile manufacturer, or a component manufacturer for an automobile manufacturer, and a consumer who purchases from a dealership are engaged in a fiduciary or special trust relationship or that there was an intent to deceive by FCA or Harman such that a duty to speak arose. In the absence of any evidence or developed argument to support his claim, both Defendants are entitled to summary judgment on Flynn's common law fraudulent concealment and omission claims (Counts 2 and 7).

Turning to Flynn's statutory fraud claims, the Illinois Consumer Fraud Act (ICFA) prohibits the "misrepresentation or the concealment, suppression, or omission of any material fact" in the conduct of any trade or commerce. **815 ILCS 505/2**. The "elements of a claim under ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, **612 F.3d 932, 934 (7th Cir. 2010)**. Defendants argue that summary judgment must be granted because the allegedly withheld information was not material to Flynn. As to the omission of information, an "omission is 'material' if the plaintiff would have acted differently had [he] been aware of it, or if it concerned the type of information upon which [he] would be expected to

rely in making [his] decision to act." ***DOD Technologies v. Mesirow Ins. Services, Inc.*** **887 N.E.2d 1, 10 (2008)**.

Here, there is a genuine issue of material fact as to whether the information about the Uconnect design and installation that allegedly was withheld would have changed Flynn's decision to purchase his vehicle or whether it was the type of information that he would be expected to rely on in deciding to purchase a vehicle. Defendants gloss over Flynn's evidence that he did not fully understand the cybersecurity risks of the Uconnect device in his car by pointing to testimony that Flynn understands that computers can be hacked and that he purchased a car with a computer. That is insufficient to warrant summary judgment on the basis of materiality.

Defendants next argue that Flynn cannot demonstrate that he relied on the information at issue, but ICFA does not require proving reliance, only that a defendant intended that a consumer would rely on a deceptive or unfair practice. ***See Wigod*, 673 F.3d at 575 n.13**. Flynn, however, must establish causation, as Defendants point out. His ICFA claim contends that FCA's advertisements touting the safety of the class vehicles were deceptive because FCA knew their design and installation was not, in fact, safe, but Flynn cannot point to a specific communication or advertisement that he saw.

Under ICFA, deceptive advertising cannot be the proximate cause of damages unless the advertisement actually deceives the plaintiff. ***Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 217 (Ill. 2004)**. Additionally, Illinois courts have held that a plaintiff cannot establish proximate cause where he cannot identify a specific communication between himself and the defendant. ***See De Bouse v. Bayer*, 922 N.E.2d**

**309, 316 (Ill. 2009)**. Flynn's ICFA theory that alleges that Defendants engaged in deceptive advertising in order to protect profits and to avoid recalls that would damage their brand image is essentially a "market theory of causation" that Illinois courts squarely reject. *See Community Bank of Trenton v. Schnuck Markets, Inc.* **887 F.3d 803, 823 (7th Cir. 2018)**. Flynn offers no evidence that creates a genuine issue of material fact as to causation. He cannot establish causation and fails to meet the requirements of pursuing an ICFA claim. Accordingly, the Court **GRANTS** Defendants' motions for summary judgment (Docs. 257, 346) on counts two, six, and seven as to Brian Flynn.

### E. Motions for Summary Judgment on Brian Flynn's Unjust Enrichment Claims (Docs. 257, 346)

Where unjust enrichment claims are based on the same conduct underlying fraud claims, the claims rise or fall together. *Cleary v. Philip Morris Inc.*, **656 F.3d 511, 518 (7th Cir. 2011)**. To that end, Flynn incorporates his fraud claim arguments as his argument against summary judgment on his unjust enrichment claims. Accordingly, the Court finds that the fraud claims and unjust enrichment claims rest on the same allegedly improper conduct and that Defendants are entitled to summary judgment against Flynn for the reasons described above. Even if the Court were not granting summary judgment on Flynn's fraud claims, however, Flynn has not produced any evidence of a benefit conferred on FCA or Harman to create a genuine issue of material fact. For all these reasons, the Court **GRANTS** the motions by Harman and FCA as to Flynn's unjust enrichment claims (Counts 3 and 8).

**F.** **Motions for Summary Judgment on Keith's Michigan Consumer Protection Act Claim (Docs. 264, 350)**

Keith alleges that both Harman and FCA violated the Michigan Consumer Protection Act. According to Keith, Defendants both made affirmative misrepresentations and failed to disclose material facts in connection with the sale of the class vehicles. The Michigan Consumer Protection Act (MCPA) prohibits "[u]nfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce." **Mich. Comp. Laws § 445.903(1)**. Both affirmative misrepresentations, such as those misrepresenting the quality of a product, and failing to reveal material facts in a way that misleads or deceives consumers are considered "unfair, unconscionable, or deceptive" acts under the MCPA. **Mich. Comp. Laws § 445.903(1)(d)&(s)**. To sustain an MCPA claim predicated on affirmative representations, Keith must establish that he relied on FCA's deceptive conduct to his detriment, meaning he must demonstrate the specific statements on which he relied. *See In re OnStar Contract Litig.***, 278 F.R.D. 352, 378 (E.D. Mich. 2011) and** *Williams v. Scottrade***, No. 06-10677, 2006 WL 2077588, at \*7 (E.D. Mich. July 25, 2006))**.

Keith identifies no specific statements on which he relied in leasing his vehicles and cannot survive summary judgment on his MCPA claim to the extent that he pursues an affirmative representation theory. Seemingly, Keith is aware of this shortfall, as his responses to the summary judgment motions appear to ignore that there is an affirmative misrepresentation aspect to his MCPA claim. Accordingly, Defendants are

entitled to summary judgment on count twelve to the extent that Keith attempts to premise his MCPA claim on affirmative misrepresentations by Defendants.

As to whether Defendants failed to reveal material facts, the elements Keith must establish are different. The MCPA proscribes "failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." **Mich. Comp. Laws § 445.903(1)(s)**. A claim premised on a failure to disclose material facts does not require a consumer to prove reliance or a duty to disclose. Here, there is a genuine issue of material fact as to whether Keith reasonably could have known of the alleged defect in his vehicles and whether that information would have altered his leasing decision. *See In re Porsche Cars North America, Inc.*, **800 F.Supp.2d 801, 855-56 (S.D. Ohio 2012)**. Keith has presented sufficient evidence to create an issue of fact as to whether Defendants knew of the alleged defects at the time of production and sale of the class vehicles and whether they failed to disclose the defects to consumers. Accordingly, Keith can demonstrate material questions of fact as to the heart of his fraudulent omission MCPA claim, and Defendants' motions for summary judgment on count twelve are denied as to that claim.

G. **Motions for Summary Judgment on George and Kelly Brown's Missouri Merchandising Practices Act Claim (Docs. 267, 348)**

To succeed on their Missouri Merchandising Practices Act (MMPA) claim, the Browns must establish that they bought merchandise from the defendants for personal, family, or household purposes and that they suffered an ascertainable loss of money or

property as a result of an act declared unlawful by Mo. Rev. Stat. 407.020, which defines the term "unlawful practice" broadly as the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri." **Mo. Rev. Stat. § 407.020.1.** Unlike common law fraud claims, the MMPA does not require showing a duty to disclose on the part of a defendant, but the MMPA does require a plaintiff to show that they suffered a loss caused by a defendant's unlawful conduct. *See Plubell v. Merck & Co., Inc.*, **289 S.W.3d 707, 714 (Mo. Ct. App. 2009)**.

The Browns present sufficient evidence to survive summary judgment on the questions of causation and materiality. They have experts and witnesses prepared to testify about the design defects in the affected vehicles and to calculate financial loss in the form of overpayment. There is evidence suggesting that FCA knew of the defects at all relevant times and did not disclose them. The Browns testify that had they known that their vehicle was designed with the alleged cybersecurity defects, then they would not have paid as much as they did or perhaps would not have purchased it at all. Taken together, this amounts to questions of material fact as to whether information concealed by FCA constituted an unlawful practice that caused the Browns to suffer an ascertainable loss.

FCA attempts to add a requirement that the Browns show something beyond the typical bad faith or recklessness showings for omission claims under the MMPA, but

the scienter requirement for claims alleging an omission of material fact relates to whether FCA knew, or upon reasonable inquiry would have known, the material facts it allegedly failed to disclose. *See Johnsen v. Honeywell International, Inc.*, **2016 WL 1242545, \*3 (E.D.Mo. 2016)(citing** *Hope v. Nissan N. Am., Inc.*, **353 S.W.3d 68, 84 (Mo. Ct. App. 2011))**. The Browns present sufficient evidence to clear this hurdle, so their MMPA claim against FCA survives summary judgment.

The Browns are in a different position as to their fraudulent omission claims against Harman. They offer no evidence that Harman knew, or upon reasonable inquiry would have known, that the installation of the Uconnect device in their vehicle led to cybersecurity defects. Harman's evidence shows that they manufactured the Uconnect device to FCA's specifications but that they had no role in the installation or fitting of the units in FCA's vehicles. The Browns offer no evidence to the contrary. Further there is no evidence or case law before the Court that suggests that Harman is a seller within the meaning of the MMPA. There is no evidence that Harman sold anything to the Browns. They produced components for a vehicle sold by FCA. Absent evidence that the Browns purchased something from Harman, as required by the plain language of the MMPA, the Browns' MMPA claims fail against Harman. Accordingly, FCA's motion for summary judgment (Doc. 267) is denied and Harman's motion for summary judgment (Doc. 348) is granted as to count nine.

### H. Motions for Summary Judgment on Missouri and Michigan Unjust Enrichment Claims (Docs. 264, 267, 348, 350)

Both the Browns and Keith bring unjust enrichment claims under the laws of their home states. In order to sustain a claim for unjust enrichment under Michigan law, a plaintiff must prove (1) that the defendant received a benefit conferred by the plaintiff, and (2) that there was a resulting inequity to the plaintiff. *Belle Isle Gill Corp. v. City of Detroit*, **666 N.W.2d 271, 280 (Mich. Ct. App. 2003)**. Similarly, Missouri requires a plaintiff to prove (1) that they conferred a benefit on a defendant; (2) that the defendant received the benefit, and (3) that the defendant retained the benefit under circumstances that render that retention inequitable. *Hertz Corp. v. RAKS Hospitality, Inc.*, **196 S.W.3d 536, 543 (Mo. App. 2006)**. Here, both the Browns and Keith face the same roadblock: they fail to put forth any evidence that a benefit was conferred on either Defendant, relying instead on conclusory statements. As the record is devoid of evidence that could create a genuine issue of material fact, the Court grants Defendants' motions for summary judgment on the Missouri unjust enrichment claim (Count 267, 348) and the Michigan unjust enrichment claim (Count 267, 350).

### I. Remaining Nationwide Class Claims

As all Plaintiffs' unjust enrichment claims fail, Defendants' motions for summary judgment on Count Three, the nationwide unjust enrichment claim, are granted, as well. Similarly, the Browns' and Keith's common law fraudulent concealment claims were dismissed with prejudice due to the economic loss doctrine. (*See* Docs. 115, 236), and the Court has granted summary judgment as to Flynn's common law claims.

Accordingly, the Court finds that none of the plaintiffs can pursue count two and grants Defendants' motions for summary judgment as to count two.

**PLAINTIFFS' MOTION TO CERTIFY CLASS**

Having fully considered Defendants' motions for summary judgment, the Court turns to Plaintiffs' motion to certify class. As a preliminary note, the question of class certification is moot as to the claims on which the Court has granted summary judgment because the named plaintiffs in this case are not proper class representatives as to their claims that lack merit. *Wiesmueller v. Kosobucki*, **513 F.3d 784, 787 (7th Cir. 2008)**. Accordingly, the Court considers whether to certify a class on the following claims:

- **Count One:** Nationwide Magnuson-Moss Warranty Act Class against both FCA and Harman;[5]

- **Count Four:** Illinois Magnuson-Moss Warranty Class against FCA;

- **Count Five:** Illinois Common Law Implied Warranty of Merchantability Class against FCA;

- **Count Nine:** Missouri Merchandising Practices Act Class against FCA;

- **Count Eleven:** Michigan Magnuson-Moss Warranty Act Class against both FCA and Harman; and

- **Count Twelve:** Michigan Consumer Protection Act Class against both FCA and Harman.

---

[5] Based on the Court's ruling on summary judgment, Flynn and Keith remain viable proposed class representatives as to FCA and Keith remains as to Harman.

## A. <u>Standard Governing Class Certification</u>

District courts should exercise "caution in class certification generally." *Thorogood v. Sears, Roebuck & Co.*, **547 F.3d 742, 746 (7th Cir. 2008)**.  To obtain class certification under Rule 23, a plaintiff must satisfy each requirement of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and one subsection of Rule 23(b).  *See Harper v. Sheriff of Cook County*, **581 F.3d 511, 513 (7th Cir. 2009); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)**.  Plaintiffs seek certification under Rule 23(b)(3), which requires that they establish that "questions of law or fact common to all class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). If the requirements of Rule 23(a) and 23(b) are satisfied, the class also must be "identifiable as a class," meaning that the class definitions must be definite enough that a class can be ascertained. *Oshana*, **472 F.3d at 513 (citations omitted)**. Failure to satisfy any of these requirements precludes certification of a class.

The putative class representatives bear the burden of proving each disputed requirement by a preponderance of the evidence. *Messner v. Northshore Univ. HealthSystem*, **669 F.3d 802, 811 (7th Cir. 2012)**. The Court does not analyze the merits of a complaint in assessing whether to certify a class, though the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Retired Chi. Police Ass'n v. City of Chicago*, **7 F.3d 584, 596 (7th Cir. 1993)**. *See also Eisen v. Carlisle v. Jacquelin*, **417 U.S. 156, 178,**

94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) ("**In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.**"). The Seventh Circuit has instructed that district courts should make "whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen 600 F.3d 813, 815 (7th Cir. 2010)(citing Szabo v. Bridgeport Machs., Inc., 249 F.3d 672, 676 (7th Cir. 2001)).* With these principles in mind, the Court considers Plaintiffs' motion to certify class.

### B. Rule 23(a) Requirements

#### a. Rule 23(a)(1): Numerosity

Rule 23(a) requires that a proposed class be "so numerous that joinder of all members is impracticable." Fᴇᴅ. R. Cɪᴠ. P. 23(a)(1). The Court may make common sense assumptions when it comes to numerosity. *See Arreola v. Godinez, 546 F.3d 788, 797 (7th Cir. 2008)*. Defendants raise no developed challenge as to numerosity, and Plaintiffs have adequately demonstrated that FCA sold over one million vehicles with the Uconnect 8.4A and 8.4AN installed. Accordingly, the Court finds that Plaintiffs satisfy the numerosity requirement.

#### b. Rule 23(a)(2): Commonality

Rule 23(a)(2) requires that "questions of law or fact common to the class" must exist before a class may be certified. Fᴇᴅ. R. Cɪᴠ. P. 23(a)(2). Courts have generally

described this requirement as a low hurdle to surmount, and it is satisfied when a common nucleus of operative facts exist. *See Flanagan v. Allstate Ins. Co*., **242 F.R.D. 421 (N.D. Ill. 2007) (citing** *Rosario v. Livaditis*, **963 F.2d 1013, 1018 (7th Cir. 1992))**. Class certification will not be defeated solely because there are some factual variations among the grievances of the class members. *McManus v. Sturm Foods, Inc*., **292 F.R.D. 606, 618 (S.D. Ill. 2013);** *see also Keele v. Wexler*, **149 F.3d 589, 594 (7th Cir. 1998)**. Rather, Plaintiffs must demonstrate that they suffered the same injury and that their claims can be resolved on a class-wide basis.

For purposes of 23(a)(2), even a single common contention, the determination of which resolves an issue that is central to the validity of the claims, is sufficient. *Wal-Mart Stores, Inc. v. Dukes*, **564 U.S. 338, 359 (7th Cir. 2011)**. What matters is the "capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* **at 351 (alteration in original)**. Courts have found that a sufficient common nucleus of operative fact exists where a defendant has engaged in standardized conduct toward members of the class. *Keele v. Wexler*, **149 F.3d 589, 594 (7th Cir. 1998)(citing cases)**. Plaintiffs clear that low hurdle. Their claims rest on the same basic allegations of actions by FCA and Harman leading up to and following the production of vehicles with the relevant Uconnect devices. The alleged defects and Defendants' alleged course of conduct in failing to disclose them raise common questions as to whether Defendants engaged in the type of standardized conduct contemplated by Rule 23(a)(2). Accordingly, the Court finds that Plaintiffs satisfy Rule 23(a)(2)'s commonality requirement.

### c. Rule 23(a)(3): Typicality

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, **472 F.3d 506, 514 (7th Cir. 2006)(citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992))**. The requirement is closely related to commonality and is meant to ensure that the named plaintiffs' claims have the same essential characteristics as the claims of the class at large. *Id.* The starting point for typicality analysis is that "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, **633 F.3d 574, 586 (7th Cir. 2011)**. Here, the named Plaintiffs' claims arise from the same practice or course of conduct (Defendants actions related to cybersecurity defects in the Uconnect devices installed in certain Chrysler vehicles) that gives rise to the claims of other potential class members, and their claims are based on the same legal theories as class members' claims. Accordingly, the Court finds that the typicality prong of Rule 23(a)(3) has been met.

### d. Rule 23(a)(4): Adequacy

The final requirement of Rule 23(a) is that the representative parties fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). This inquiry is meant to uncover "conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, **521 U.S. 591, 625 (1997)**. Adequacy of representation requires that the class representatives be a part of the class and that they

possess the same interests, and suffer the same injuries, as the class members. *Id.* at 626. The Court considers whether (1) plaintiffs' counsel is qualified, experienced, and generally able to conduct the proposed litigation, and (2) whether the named plaintiff and the proposed class have antagonistic or conflicting interests. *See Rawson v. Sources Receivables Management, LLC*, **289 F.R.D. 267, 269 (citing** *Rosario*, **963 F.2d at 1018)**. In general, absent some showing to the contrary, adequacy of representation will be presumed. *Westefer v. Snyder*, **2006 WL 2639972, at \*6 (S.D. Ill. 2006)(citing** *Guarantee Inc. Agency Co. v. Mid-Continental Realty Corp.*, **57 F.R.D. 555, 565-66 (N.D. Ill. 1972))**.

Here, Defendants challenge the adequacy of class counsel, but the undersigned is not convinced by the record that counsel cannot adequately represent the interests of the proposed classes. Counsel has pursued their clients' interests vigorously, has litigated discovery issues thoroughly, and has devoted significant time and resources to this action. While this litigation has had contentious moments and the parties have an obvious distaste for each other's tactics, class counsel has demonstrated that they are competent to fairly and adequately represent the interests of a class without conflict.

Further, despite Defendants' many objections to the adequacy of the named plaintiffs, their arguments do not focus on the relevant inquiry – whether Plaintiffs' interests are antagonistic to those of the class members. Defendants suggest, without developed argument to support the contention, that the interests of a new purchaser are antagonistic to those of a used purchaser because only one person in a chain of ownership can recover overpayment damages. Defendants also argue that class

representation is inadequate because Plaintiffs propose including purchasers and lessees in the same class. Plaintiffs' methods for damage calculations can accommodate measuring damages for different types of class members, and courts have certified classes involving claims of both purchasers and lessees of vehicles. *See Daffin v. Ford Motor Co.*, **458 F.3d 549, 552 (6th Cir. 2006);** *Trew v. Volvo Cars of North America LLC*, **2007 WL 2239210 (E.D. Cal. 2007)**. The Court finds that Plaintiffs carry their burden of establishing adequacy by a preponderance of the evidence. At this time, the named plaintiffs' claims are not in conflict with those that could be brought by class members and their interests and alleged injuries align, though the Court may revisit this issue in the future if necessary.

### B. Rule 23(b)(3) Considerations

Plaintiffs' predominance argument in their opening brief is insufficient to satisfy the Court that they have satisfied their burden. Predominance is similar to typicality and commonality but is far more demanding, and Plaintiffs barely scratch the surface of what the Court must consider. They are saved from a ruling that they failed to establish predominance only by the time spent discussing relevant issues during the hearing on the motion to certify class.

As Plaintiffs seek certification under Rule 23(b)(3), they must show (1) that the questions of law or fact common to the members of the proposed class predominated over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy. *Messner v. Northshore University HealthSystem*, **669 F.3d 802, 811 (7th Cir. 2012)**. The Rule 23(b)(3) "inquiry

trains on the legal or factual questions that qualify each class member's case as a genuine controversy," with the purpose being to determine whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." ***Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)**. Rule 23(b)(3) "poses the question whether a single suit would handle the dispute better than multiple suits." ***In re Aqua Dots Prods. Liab. Litig.* 654 F.3d 748, 752 (7th Cir. 2011)**. The Court considers class members' interest in individually controlling separate actions, the extent of any litigation already begun by class members, the desirability of concentrating the litigation in this form, and likely difficulties in managing a class action. **FED. R. CIV. P. 23(b)(3)(A)-(D)**.

a. **Damages**

The Court first considers whether "damages are susceptible of measurement across the entire class." ***Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th Cir. 2014)**. If damages can be estimated, the Court moves on to examine the factors identified in 23(b)(3), which "deal with the interests of individual members of the class in controlling their own litigations and carrying them on as they see fit." ***Id.* (internal quotations and citing references omitted)**.

Damages are susceptible of class-wide measurement if there is a "single or common method that can be used to measure and quantify the damages of each class member. **WILLIAM RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 12:4 (5th Ed. 2013)**. If damages can be measured on a class-wide basis, then questions of individual damage calculations will not overwhelm questions common to the class. ***Comcast Corp. v.***

*Behrend*, **569 U.S. 27, 35-36 (2013)**. Individualized questions regarding damages do not prevent certification under 23(b)(3). *Messner*, **669 F.3d at 815**.

Here, Plaintiffs offer two methods to measure damages on a class-wide basis. First, they offer that damages could be calculated by expert Myles Kitchen who would estimate a cost of repair for the class vehicles by estimating the cost to retrofit the vehicles with the needed cybersecurity upgrades. Considering that Plaintiffs' case is focused on whether class members overpaid for their vehicles, the undersigned is unconvinced that this is a method for calculating class-wide damages. Damages must fit a plaintiff's theory of liability and be sufficiently reliable. *Mullins v. Direct Digital, LLC*, **795 F.3d 654, 671 (7th Cir. 2015)**. Plaintiffs offer little argument in support of how the cost of repair method fits their theory of liability, and that is insufficient to meet their burden.

Plaintiffs offer another method for measuring class-wide damages: a discrete choice analysis that could measure consumer opinions on the economic value of vehicle cybersecurity. This method is an enhanced form of conjoint analysis, a methodology often used to calculate damages in class actions and is sufficiently tied to Plaintiffs' theory of liability. The analysis attempts to measure the value of the class vehicles had consumers been aware of the allegedly withheld information about the lacking cybersecurity. With this method, Plaintiffs have met their burden of showing a proposed class-wide damage calculation that is consistent with their theory of liability.

### b. Predominance

Predominance analysis begins with the elements of the underlying causes of action. *Messner*, **699 F.3d at 815**. The "predominance requirement is meant to test whether proposed classes are sufficiently cohesive to warrant adjudication by representation, but it scarcely demands commonality to all questions." *Comcast Corp.*, **569 U.S. at 41**. It is generally satisfied "when common questions represent a significant aspect of [a] case and … can be resolved for all members of [a] class in a single adjudication." *Messner*, **699 F.3d at 815 (citing reference omitted, alterations in original)**. The inquiry focuses on whether a common nucleus of operative facts and issues underlies the proposed class claims rather than on whether some individualized questions exist. A question is common if the same evidence answers it for all class members. "Mere *assertion* by class counsel that common issues predominate is not enough." *Parko v. Shell Oil Co.*, **739 F.3d 1083, 1085 (7th Cir. 2014)(alteration in original)**.

### i. Proposed Nationwide Classes

Rule 23(b)(3) warns against certifying a nationwide class on the Magnuson-Moss Warrant Act claim. MMWA claims rely on underlying state law. The Court squarely rejects Plaintiffs' contention that Michigan law should be applied to an entire nationwide class regardless of where class members reside or where they purchased and used their vehicles. To certify a class potentially would require the Court to apply the law to every state, and there are wide variations between various state implied

warranty claims, including, but not limited to, states that require privity and states that do not. To do so would be unwieldy and would require highly individualized inquiries.

Plaintiffs propose that, to overcome the differences in underlying state laws the Court could instead certify subclasses of class members living in states that require privity and class members living in states that do not. Even though that broadly covers an aspect of implied warranty claims that varies from state to state, there are more variations between state laws on the implied warranty of merchantability than just the question of privity. Merchantability, for example, can be defined differently at the state level with different nuances carved out, and the application of the state definition to a consumer's factual situation would determine, in part, whether a claim rises or falls. For this reason, courts commonly refuse to certify nationwide classes based on warranty, fraud, and products-liability suits based on questions of commonality, predominance and superiority, and this Court finds that doing so is necessary here. *See In re Bridgestone/Firestone, Inc.*, **288 F.3d 1012, 1015 (7th Cir. 2002)**. Accordingly, the Court declines to certify nationwide MMWA class, as proposed by Plaintiffs. [6]

### ii. Proposed State Classes

As to the state classes, the Court finds that common questions predominate. For Plaintiffs' implied warranty claims, there appears to be no difference among class members with respect to proving merchantability and the defectiveness of the class vehicles. For the omission-based consumer protection claims, whether Defendants

---

[6] Similarly, had counts two and three survived summary judgment, Rule 23(b)(3) would bar certification of nationwide classes due to variations in state laws related to fraudulent concealment and fraudulent omission claims and to unjust enrichment claims.

knew the vehicles were defective and engaged in unlawful practices poses a common question that predominates over individual questions that may arise. Further, these common questions are particularly appropriate for class-wide resolution. The proof needed to answer these questions is common to all class members, and it would be highly costly to litigate the same questions of liability on an individual basis. In *Amchem*, the Supreme Court commented that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." **521 U.S. at 625**. While individualized remedies and damages may have to be determined based on subclasses or an individual level, that does not preclude certification. ***Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013)**. Accordingly, the Court finds that Plaintiffs have met their burden as to predominance in the proposed state-wide class claims (Counts 4, 5, 9, 11, and 12).

### c. Superiority

Under the superiority requirement of Rule 23(b)(2), a class action must be superior to other available methods for the fair and efficient adjudication of the controversy. "Class certification is usually considered a superior method of adjudicating claims involving standardized conduct, even if there are individual issues that exist among class members (for example, on questions such as damages), so long as those individual issues can be managed through bifurcated hearings." ***Cicilline v. Jewel Food Stores, Inc.*, 542 F.Supp.2d 831, 838 (N.D. Ill. 2008)**; *See Arrreola*, **546 F.3d at 800-01 ("Although the extent of each class member's personal damages might vary,**

**district judges devise solutions to address that problem if there are substantial common issues that outweigh the single variable of damages amount.")**.

Because common issues predominate and the named Plaintiffs are typical and adequate class representatives, as discussed above, the instant case meets this requirement. Despite individualized damage inquiries that may be required if the class prevails, this case will be manageable as a class action. Requiring each class member to bring a separate action would be a waste of time and money. *See Markham v. White*, **171 F.R.D. 217, 224 (N.D. Ill. 1997).** The Court finds that the superiority requirement of Rule 23(b)(3) is met.

## C. Class Definition

Having determined that the 23(a) and 23(b)(3) factors are satisfied as to counts four, five, nine, ten, and eleven, the final consideration before the Court is the definition of the proposed class. A class definition "must be definite enough that the class can be ascertained." *Oshana*, **472 F.3d at 513**. On their state claims, Plaintiffs propose that the class be defined as:

> All persons who purchased or leased vehicles in [the state at issue], which were manufactured by FCA and which are equipped with the Uconnect 8.4A or Uconnect 8.4AN systems that were subject to the July 23, 2015 NHTSA Safety Recall campaign number 15V461.

Defendants argue that, as proposed, the class definition is unmanageable because class members would be ever-shifting due to the failure to include time limitations, making the class amorphous. Plaintiffs' response is that the Court should exercise its power to modify the class definition rather than deny certification, and they propose the date of

class certification as a cut-off date for class membership. A cut-off date is necessary to avoid manageability difficulties, as new class members could be created any time a class vehicle is purchased on the resale market. Class definition issues should be solved by refining the class rather than flatly denying certification. *Messner*, **669 F.3d at 825**. Accordingly, the Court will adjust the class definitions rather than deny certification.

C<small>ONCLUSION</small>

Defendants' motions for summary judgment (Docs. 256, 257, 264, 267, 346, 348, 350) are **GRANTED in part** and **DENIED in part**. At the close of the case, the Clerk of Court is **DIRECTED** to enter judgment as follows:

- On Count One, in favor of Harman and against Brian Flynn.

- On Counts Two and Three, in favor Harman and FCA and against Flynn, Keith, and George and Kelly Brown

- On Counts Six, Seven, and Eight, in favor of Harman and FCA and against Flynn;

- On Count Nine, in favor of Harman and against the Browns;

- On Count Ten, in favor of Harman and FCA and against the Browns; and

- On Count Thirteen, in favor of Harman and FCA and against Keith.

Further, for the above-stated reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' motion to certify class (Doc. 266). The motion is denied as to both FCA and Harman on counts one, two, three, six, seven, eight, ten, eleven, and thirteen. The motion is further denied as to Harman on counts four, five, and nine.

The motion is **GRANTED** as follows:

Counts Four and Five: an Illinois Class against FCA US, LLC defined as:

> All persons who purchased or leased vehicles in Illinois on or before July 5, 2018, that were manufactured by FCA and that are equipped with the Uconnect 8.4A or Uconnect 8.4AN systems that were subject to the July 23, 2015 NHTSA Safety Recall campaign number 15V461.

Count Nine: a Missouri Class against FCA US, LLC defined as:

> All persons who purchased or leased vehicles in Missouri on or before July 5, 2018, that were manufactured by FCA and that are equipped with the Uconnect 8.4A or Uconnect 8.4AN systems that were subject to the July 23, 2015 NHTSA Safety Recall campaign number 15V461.

Count Twelve: a Michigan Class against FCA US, LLC and Harman defined as:

> All persons who purchased or leased vehicles in Michigan on or before July 5, 2018, that were manufactured by FCA and that are equipped with the Uconnect 8.4A or Uconnect 8.4AN systems that were subject to the July 23, 2015 NHTSA Safety Recall campaign number 15V461.

The Court **APPOINTS** Brian Flynn as class representative for the Illinois class, Keith Brown as class representative for the Michigan class, and Kelly and George Brown as class representatives for the Missouri class. The Court also **APPOINTS** the following law firms as class counsel: Armstrong Teasdale LLP; Law Office of Christopher Cueto, LTD; Law Office of Lloyd M. Cueto, P.C.; and Law Office of Stephen R. Wigginton.

In light of an anticipated appeal of this Order, the Court **VACATES** the July 16, 2018 trial date and continues the jury trial in this matter indefinitely.

Should no party file a timely notice of appeal, the parties shall confer regarding class notice and shall file a status report with their joint proposal or competing proposals by August 10, 2018.

**IT IS SO ORDERED**.

DATED: July 5, 2018

<u>*s/ Michael J. Reagan*</u>
MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**