# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BRIAN FLYNN, GEORGE BROWN,** | ) | |
| **KELLY BROWN, MICHAEL KEITH,** | ) | |
| **on behalf of themselves and all others** | ) | |
| **similarly situated,** | ) | |
| | ) | **Case No. 15-cv-855-SMY** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **FCA US LLC and** | ) | |
| **HARMAN INTERNATIONAL** | ) | |
| **INDUSTRIES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

### Background

Plaintiffs Brian Flynn, Michael Keith, and George and Kelly Brown bring this putative

class action against Defendants FCA US LLC ("FCA") and Harman International Industries, Inc.

("Harman"), asserting consumer fraud claims related to a design defect in the Uconnect system

manufactured by Harman and installed in some of FCA's 2013-2015 model vehicles ("the subject

vehicles").

The Uconnect system allows integrated control over phone, navigation, and entertainment

functions in the subject vehicles and, according to Plaintiffs, is vulnerable to hackers seeking to

take remote control of the subject vehicles, as reported in a 2015 *WIRED* magazine article that

contributed to a subsequent voluntary recall by Chrysler. Aside from the hack described in the

*WIRED* article, which was conducted in a controlled environment, there has been no hack of the

Uconnect system; no hacker has remotely accessed the system, no hacker has seized control of a vehicle's operations, and no consumer has ever been injured.

Plaintiffs allege the subject vehicles continue to have vulnerabilities that could allow hackers to access critical and non-critical systems in the vehicles. Specifically, they allege the vehicles are defective in that: (1) the Uconnect system is exceedingly hackable; (2) the vehicles' central computer system fails to prevent hackers from using access gained through the Uconnect from remotely taking control of the vehicles; and (3) the Uconnect system and subject vehicles lack the capability to quickly, automatically, safely, securely, and effectively download software patches that are critical for protecting vehicles from the types of attacks described. They further allege that but for Defendants' misrepresentations about the defects, they would not have purchased the vehicles or would have paid less for them. They contend the defects have diminished the value of their vehicles and that upon resale, members of the class will receive less for their vehicles than they would have had the vehicles been free from the alleged defects.

## Procedural History

In February 2016, Defendants moved to dismiss Plaintiffs' First Amended Complaint, arguing that Plaintiffs lack standing to pursue their claims because they fail to allege the types of standing injuries recognized as viable by the courts. Judge Michael Reagan, to whom this case was previously assigned, denied Defendants' motions, concluding Plaintiffs have alleged sufficient facts to establish Article III standing (*see* Docs. 115, 236).

Defendants moved for reconsideration and renewed their standing challenge in January 2018, based on a decision from the Ninth Circuit Court of Appeals, upholding a district court's dismissal of a complaint for lack of standing in a lawsuit involving allegations nearly identical to those made by Plaintiffs in this case. *See, Cahen v. Toyota Motor Corp.*, 2017 WL 6525501 (9th

Cir. 2017) (Doc. 378).  Judge Reagan denied reconsideration but certified the standing issue for interlocutory appeal under 28 U.S.C. § 1292(b), acknowledging that his decision conflicted with *Cahen* (and several other decisions) which arose on "allegations nearly identical to those made by Plaintiffs in this case" (Doc. 385).  The Seventh Circuit Court of Appeals denied the interlocutory appeal without explanation in May 2018 (Doc. 388).

Judge Reagan granted Plaintiffs' Motion for Class Certification in July 2018 and certified three separate statewide classes consisting of consumers from Illinois, Michigan and Missouri, the home states of the named Plaintiffs – Flynn (Illinois), George and Kelly Brown (Missouri), and Keith (Michigan) (Doc. 399).  All three classes were certified against FCA; only the Michigan class was certified against Harman.  Each class was defined to include: "All persons who purchased or leased vehicles in [the applicable state] on or before July 5, 2018, that were manufactured by FCA and that are equipped with the Uconnect 8.4A or Uconnect 8.4AN systems that were subject to the July 23, 2015 NHTSA Safety Recall campaign number 15V461."

This case was reassigned to the undersigned judge in April 2019, following Judge Reagan's retirement.   After the close of discovery, Defendants filed a Motion to Decertify the Classes (Doc. 550), Motions for Summary Judgment (Docs. 561, 586), a Motion to Dismiss for Lack of Jurisdiction (Doc. 574), and a Motion to Stay Issuance of Class Notice Pending the Rulings on Dispositive and Decertification Motions (Doc. 578), all of which are ripe for resolution.  Because the Court has an independent obligation at each stage of the proceedings to ensure that it has subject matter jurisdiction over this litigation, the undersigned finds it appropriate to address Defendant's Motion to Dismiss for Lack of Jurisdiction before delving into the merits of the case.

## Standard of Review

When considering a Rule 12(b)(1) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Alicea-Hernandez v. Catholic Bishop of Chi.,* 320 F.3d 698, 701 (7th Cir. 2003). However, if a defendant challenges standing as a factual matter, the Court may look beyond the allegations in the complaint and view whatever evidence has been submitted to determine whether subject matter jurisdiction exists. *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 444 (7th Cir. 2009). The Court is free to weigh the evidence and satisfy itself that it has power to hear the case. *Id.* There is "no presumptive truthfulness attache[d] to plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims." *Id.* The plaintiff bears the burden of establishing standing by a preponderance of the evidence. *See Reid v. Ill. State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004).

## Discussion

As an initial matter, Plaintiffs argue that Defendant's motion to dismiss should be denied out of hand based on the law of the case doctrine. The law of the case is a discretionary doctrine, not an inflexible dictate. *See Chicago Joe's Tea Room, LLC v. Village of Broadview*, 894 F.3d 807, 818 (7th Cir. 2018) (collecting cases). "When good reasons for [re-examination] appear (such as new evidence or controlling law, or clear error), the 'law of the case' doctrine must yield to rational decision-making." *Id. quoting Peterson v. Lindner*, 765 F.2d 698, 704 (7th Cir. 1985). And, the Court is "significantly less constrained by the law of the case doctrine with respect to jurisdictional questions." *Gilbert v. Illinois State Bd. of Educ.*, 591 F.3d 896, 903 (7th Cir. 2010), quoting *O'Sullivan v. City of Chicago*, 396 F.3d 843, 849–50 (7th Cir. 2005). In this case, the

Court's interests in ensuring subject matter exists, adhering to controlling law, and preventing clear error warrant a reexamination of Defendants' standing arguments.

Article III of the United States Constitution limits federal court jurisdiction to actual cases and controversies. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Article III standing requires: (1) that the plaintiff suffered an injury in fact – an invasion of a legally protected interest which is concrete and particularized and actual or imminent – not conjectural or hypothetical; (2) that there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant; and (3) that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 574 (1992); *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016).

Plaintiffs claim that the fundamental designs of the internal communications architectures in their vehicles and the Uconnect are "radically unsafe" to the point they are dangerously vulnerable to cyberattacks that take control of the vehicles' critical safety systems, including steering, braking, acceleration, and ignition. They also claim Defendants misled class members to believe they were buying or leasing safe vehicles but sold them vehicles riddled with critical safety defects instead. They allege that overpayment injuries are clear, concrete, and were suffered at the moment each class member purchased or leased the vehicle.

Plaintiffs rely heavily on *In re Aqua Dots*, 654 F.3d 748 (7th Cir. 2011) and *Cole v. General Motors Corporation*, 484 F.3d 717 (5th Cir. 2007) for the proposition that overpayment or a drop in value suffices as an injury for standing purposes. In *Aqua Dots*, the defendants manufactured a children's toy that contained beads made with chemicals which, if swallowed, caused serious injury to children. A group of parents who purchased the toy but whose children were not injured,

filed a class action lawsuit seeking refunds of the entire purchase price. *Id.* at 750. After the district court refused to certify a class, the parents filed an interlocutory appeal in the Seventh Circuit Court of Appeals. *Id.* As a threshold matter, the Seventh Circuit considered whether the parents had standing and concluded that under a benefit-of-the-bargain theory, an economic injury occurs when the purchaser acquires a worthless product, even if there is no indication that he was physically harmed by the product – "they paid more for the toys than they would have, had they known the risks the beads posed to children." *Id* at 751.

In *Cole*, a class of plaintiffs sued General Motors alleging defects with the defendant's side-impact airbag system, which plaintiffs alleged the defendant promoted as an added safety feature. *Cole*, 484 F.3d at 718. The alleged defect was such that it could have caused the vehicles' side-impact airbag systems to deploy unexpectedly and without a crash. *Id.* at 718–19. The plaintiffs' airbags had never inadvertently deployed, but they alleged they suffered economic injury when they purchased a defective vehicle. *Id.* The plaintiffs also claimed that they suffered economic injury from the defendant's unreasonable delay in replacing the defective airbags on the vehicles. *Id.* They sought recovery for actual economic harm, including overpayment, loss in value, or loss of usefulness, arising from the loss of their benefit of the bargain. *Id*. The Fifth Circuit Court of Appeals found that the plaintiffs had established a concrete injury-in-fact and had standing. Significantly, the court concluded there was "no doubt" the airbags were defective and had caused actual damage, based on instances when the airbags had deployed unexpectedly in other vehicles. *Id*. Thus, the Fifth Circuit held the plaintiffs had sufficiently alleged an economic injury because their vehicles were defective at the moment of purchase and because of the defendant's allegedly unreasonable delay in offering service for the defect.

The first distinction between Plaintiffs' allegations and the *Aqua Beads* and *Cole* plaintiffs is that it is unclear whether the Uconnect system is defective at all. This case, in which it is unclear whether the Uconnect system is defective at all, is factually distinguishable from *Aqua Dots* and *Cole*, where it was undisputed that the products were defective; the products had caused injury and it was reasonably foreseeable that an injury could occur. The *Aqua Dots* plaintiffs purchased a toy that had been proven could poison children and was, therefore, a worthless product that could not be utilized; the *Cole* plaintiffs purchased vehicles lauded by the defendant as having an added safety feature which, in fact, was demonstrably defective.

Here, Plaintiffs concede that only one hack of the 1.2 million subject vehicles with the purported defects has occurred, and that one occurrence took place when two highly trained researchers hacked a vehicle in a controlled setting (Doc. 575-1, p. 61; *see also* Docs. 93-96 at Nos. 1-2, 4-5). Relatedly, Plaintiffs' expert's opinion, on which they rely in part to support standing, is that the Uconnect system is "defective" because it should have "more" safety features associated with it (Doc. 575-2, pp. 7, 45-46). More specifically, the Uconnect system could have been made safer by adding secure gateways, trust anchors, and intrusion detection to the vehicles, and by having six CAN bus segments instead of two. *Id.* at pp. 8, 52-53. But while in his opinion, the defect is that the Uconnect has vulnerabilities, he also acknowledges that "vulnerabilities happen" so the mere fact that a product has "a vulnerability" does not in itself, mean a product is defective (Doc. 575-1 at pp. 88-89).

Theoretically, any product can be made safer or better – there are no foolproof products. The fact that the Uconnect has vulnerabilities and could have been made safer does not make it defective when no vehicles have ever manifested the alleged defect. Plaintiffs' claims are thus qualitatively different than those made by consumers who allege the purchase of a product that

was reduced in value at the point of sale because of an actual defect (*Aqua Dots, Cole*), resulting in immediate, concrete, and particularized financial harm.[1]

Moreover, Courts faced with similar standing challenges have found that a future risk of hacking is too speculative and that allegations of economic loss stemming from speculative risk of future harm cannot establish standing. *See Cahen v. Toyota Motor Corp.*, 147 F.Supp.3d 955 (N.D. Cal. 2015) *aff'd by Cahen v. Toyota Motor Corp.*, 717 Fed.Appx. 720 (9th Cir. 2017); *U.S. Hotel and Resort Mgmt., Inc.* 2014 WL 3748639 (D. Minn. July 30, 2014) (dismissing for lack of standing claims as too speculative where plaintiffs alleged a risk of future injury due to publicity surrounding certain hotel room locks' susceptibility to unauthorized opening). Although the Ninth Circuit's decision in *Cahen* is unpublished and non-precedential, the facts closely parallel those here, and the undersigned finds the analysis persuasive.

In *Cahen*, the plaintiffs claimed the defendants equipped their vehicles with computer technology that was susceptible to third-party hacking. But they did "not allege that any of their vehicles have actually been hacked, or that they are aware of any vehicles that have been hacked." They raised the same overpayment theory of injury as Plaintiffs in this case, -- that "they would not have purchased their [vehicles] or would not have paid as much as they did to purchase them"

---

[1] Plaintiffs cite additional cases for the proposition that economic injuries are a sufficient basis to establish standing. Unlike the cited authority, here, Plaintiffs' economic injury is speculative and not directly ascertainable. *See, eg., Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91 (1979) (finding village had standing to challenge legality of defendants' conduct under the Fair Housing Act of the Civil Rights Act of 1968 where village alleged that sales practices of real estate brokerage firms and employees had actually begun to rob village of its racial balance and stability); *Maya v. Centex Corp.,* 658 F.3d 1060 (9th Cir. 2011) (homeowners had standing to sue developers for decreased value and desirability of their homes where they alleged that the developers' actions in marketing neighboring homes to unqualified buyers resulted in foreclosures which reduced value of their houses, since foreclosures sold below market value and then became new comparative sales values for the neighborhood; *Chicago Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*, 24 F. Supp. 3d 750 (N.D. Ill. 2014) (plaintiffs had standing because they would not have purchased defendant's bottled water or paid a premium for it if they had known it was municipal tap water instead of 100% natural spring water as marketed); *Gustavson v. Wrigley Sales Company*, 961 F.Supp.2d 1100 (N.D. Cal. 2013) (same).

had they known that the defendants were misrepresenting the security of the technology. *Id.* at 966 (alteration in original). The district court found that the plaintiffs failed to establish standing because the "entire threat [alleged] rests on the speculative premise that a sophisticated third-party cybercriminal may one day successfully hack one of plaintiffs' vehicles." *Id.* This theory of *future* injury was too speculative to satisfy the well-established requirement that threatened injury must be "certainly impending," and failed to identify a risk of harm that was "concrete and particularized as to [the plaintiffs]." *Id.* at 967 (quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009)). The court went on to conclude that "[w]hen economic loss is predicated solely on how a product functions, and the product has not malfunctioned, ... something more is required than simply alleging an overpayment for a 'defective' product." *Id.* at 970. The Ninth Circuit affirmed, finding that the alleged defect was speculative and had never manifested. *Cahen v. Toyota Motor Corp.*, 717 Fed. Appx at 720.

The evidence proffered by Plaintiffs' damage experts as proof of diminution in value consists of a survey conducted by one expert where consumers were asked to make choices about vehicle features, and application by another expert of the survey results in a calculation that deducts that value from the sale price of each vehicle. As was true in *Cahen*, there has been no demonstrable effect on the market for Plaintiffs' vehicles based on, for example, documented recalls, declining Kelley Bluebook values, or a risk so immediate that they were forced to replace or discontinue using their vehicles, thus incurring out-of-pocket damages. *Cahen,* 717 F. App'x at 723–24. Plaintiffs do not allege their Uconnect systems do not work; that they have experienced any problems related to the Uconnect system; that they are unwilling to drive their vehicles because of the defects in the Uconnect systems; or that they have sold or traded (or attempted to sell or trade) their vehicles at a loss due to the alleged defects with the Uconnect system.

Simply stated, Plaintiffs do not have standing. The allegation that Defendants wrongfully induced them to purchase their vehicles by concealing the alleged defect in the Uconnect and that their vehicles are worth substantially less than they would be without the alleged defect is conclusory and unsupported. "A 'concrete' injury must be '*de facto*;' that is, it must actually exist." Black's Law Dictionary 479 (9th ed. 2009); *See also*, *Rivera v. Wyeth–Ayerst Laboratories,* 283 F.3d 315, 320-21 (5th Cir. 2002) ("The plaintiffs apparently believe that if they keep oscillating between tort and contract law claims, they can obscure the fact that they have asserted no concrete injury. Such artful pleading, however, is not enough to create an injury in fact."); *Lassen v. Nissan N. Am*., Inc. 211 F.Supp. 3d 1267, 1281 (C.D. Cal. 2016) (collecting cases). Ultimately, Plaintiffs have not suffered any injury in fact. They received what they bargained for – vehicles equipped with infotainment services – and do not plausibly allege that they were financially harmed by virtue of their vehicle purchases.

The undersigned does not arrive at its conclusion lightly, particularly given the lengthy history of this litigation. That said, the Court cannot address the merits of Plaintiffs' claims without the constitutional authority to do so. Accordingly, Defendants' Motion to Dismiss for Lack of Jurisdiction is **GRANTED** and this case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

      **IT IS SO ORDERED.**

      **DATED: March 27, 2020**

                                    **STACI M. YANDLE**
                                      **United States District Judge**